## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| VALLEY FORGE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| -v- | ) Civ. Action # 1:14-cv-00792-MRB ) |
| FISHER KLOSTERMAN, INC., | ) ) |
| Defendant. | ) ) ) |

### DEFENDANT FISHER KLOSTERMAN, INC.'S OPPOSITION TO PLAINTIFF VALLEY FORGE INSURANCE COMPANY'S MOTION TO DISMISS COUNT VI (BAD FAITH) OF THE COUNTERCLAIMS, OR IN THE ALTERNATIVE, MOTION FOR LEAVE TO AMEND COUNT VI OF THE COUNTERCLAIMS

Defendant Fisher Klosterman, Inc. ("FKI") respectfully submits this memorandum of law in opposition to Plaintiff Valley Forge Insurance Company's ("Valley Forge") motion to dismiss FKI's counterclaim for bad faith. Plaintiff's motion should be denied. However, in the alternative, FKI moves for leave to amend its counterclaim for bad faith.

## I.     Summary of Argument

As alleged by FKI in its Counterclaims, Valley Forge has engaged in a course of conduct throughout its handling of FKI's insurance claim for costs arising out of *Valero Refining-Texas, L.P., et al. v. Fisher Klosterman, Inc., et al.*, Case No. 2010-52532, 127th Judicial District, Harris County, Texas ("Valero Suit") – including during this litigation – which constitutes bad faith under Ohio law.[1]  Among other things, FKI has alleged that Valley Forge refused to acknowledge FKI's tender of its claims against third parties who are potentially liable for defense costs in the Valero Suit; refused to engage in meaningful settlement negotiations with FKI; has ignored or withheld dispositive evidence bearing on its claims concerning its duty to defend and its claim for implied-in-fact contract; and engaged in litigation tactics designed to run

---

[1] FKI reserves the right to argue that state law other than that of Ohio applies to FKI's bad faith claim.

up FKI's defense costs in this litigation in an effort to force FKI to compromise its right to a defense under the insurance policies.  Because Valley Forge's counsel in this litigation was also Valley Forge's counsel with respect to the Valero Suit and FKI's insurance claim, it is not only plausible, but highly likely, that Valley Forge is actually aware of evidence undermining its claims and was without reasonable justification in instituting several of its claims in this litigation.  Moreover, FKI has alleged that Valley Forge's conduct consciously disregards FKI's rights under the insurance policies.

Construing FKI's counterclaim in the light most favorable to FKI, accepting FKI's allegations as true, and drawing all reasonable inferences in FKI's favor, FKI's counterclaim states a claim for bad faith under Ohio law.  For these reasons and all of the reasons set forth herein, the Court should deny Valley Forge's motion to dismiss.  In alternative, FKI moves for leave to amend its counterclaim for bad faith pursuant to Fed. R. Civ. P. 15(a).  A copy of FKI's Proposed Amended Counterclaims is attached hereto as Exhibit A.

## II.    Relevant Factual Allegations and Procedural History

Valley Forge commenced this litigation on October 8, 2014, seeking declarations concerning its duty to defend and duty to indemnify FKI in the Valero Suit, a products liability suit that alleged FKI sold pollution-control equipment to Valero that caused property damage at various of Valero's refineries.  Dkt.#1.  In its Complaint, Valley Forge also asserted claims for implied-in-fact contract, implied in law contract, unjust enrichment, and *quantum meruit* in order to recoup defense costs that Valley Forge paid to FKI's defense counsel in the Valero Suit. *Id*.[2]

---

[2] Valley Forge moved for summary judgment on its claims concerning its duty to defend, its duty to indemnify, and for implied-in-fact contract on February 27, 2015.  Dkt.#28.  FKI opposed and cross-moved on March 30, 2015.  Dkt.#33.  Valley Forge filed a motion to strike certain assertions in a declaration submitted in support of FKI's opposition and cross-motion on April 23, 2015, which FKI opposed.  Dkt.#39.  FKI filed a motion for leave to submit a surreply in further support of its cross-motion on May 14, 2015, which Valley Forge opposed.  Dkt.#43. These motions remain pending.

On November 21, 2014, FKI moved to dismiss Valley Forge's claims for implied in law contract, unjust enrichment, and *quantum meruit*.  Dkt. #14.  In the alternative, FKI moved to strike certain allegations in the complaint.  *Id.*  The Court denied FKI's motions to dismiss and to strike on September 3, 2015.  Dkt#50.

FKI answered Valley Forge's Complaint and asserted counterclaims against Valley Forge on October 1, 2015.  Dkt.#54.  FKI's Counterclaims seek declarations that: (1) Valley Forge had a duty to defend FKI in the Valero Suit (Counterclaim ("CC") ¶¶80-103); (2) there is no implied-in-fact contract between Valley Forge and FKI for recoupment of defense costs (CC ¶¶104-115); (3) FKI was not unjustly enriched by Valley Forge's payment of defense costs (CC ¶¶116-125); (4) Valley Forge has no right to recovery in *quantum meruit* due to its payment of defense costs (CC ¶¶126-135); (5) FKI cooperated with Valley Forge in the defense of the Valero Suit (CC ¶¶136-151); and (6) Valley Forge committed bad faith with respect to FKI's insurance claim (CC ¶¶ 152-181).

FKI has made the following allegations in support of its bad faith counterclaim:

- By letter dated April 12, 2013, FKI rejected in writing Valley Forge's attempt to reserve a right to recoup defense costs. CC ¶¶51-52, 109-111, 173.  Although Valley Forge had knowledge of this evidence, which is dispositive of Valley Forge's claim for implied-in-fact contract, Valley Forge completely ignored the letter when Valley Forge filed its Complaint and moved for summary judgment. CC ¶¶173.

- Valley Forge disregarded FKI's interests by, among other things, intervening in the Valero Suit despite FKI's request that it not do so because it interfered with FKI's defense.  CC ¶¶55-57.

- Valley Forge was highly informed of and involved in the defense of the Valero Suit and indemnification issues relating thereto, including whether to assert claims in the Valero Suit against potentially liable third parties BFK, Inc. ("BFK") and Industries Valtech Inc. ("Valtech") and tolling agreement negotiations with those parties.  CC ¶¶58-67.

- After Valley Forge failed to obtain a tolling agreement with BFK, FKI filed suit against BFK to preserve the statute of limitations on FKI's indemnification claims against BFK and tendered the suit to Valley Forge, but Valley Forge failed to

respond *at all* to the tender despite Valley Forge's repeated requests for FKI to pursue indemnification claims against BFK and despite Valley Forge's tentative agreement that it would pursue BFK with FKI.  CC ¶¶61, 63-64, 68-69, 166-167, 171.

- Despite repeatedly requesting that FKI pursue Valtech for indemnification and tentatively agreeing to pursue Valtech with FKI, Valley Forge has failed to respond to FKI's repeated offers to tender its rights to pursue recovery from Valtech. CC ¶¶61, 168-169, 171.

- Since Valley Forge admitted that FKI was successful in the Valero Suit, Valley Forge has admitted that it was not materially injured in its ability to contest the Valero Suit (the standard for breach of the duty to cooperate under Ohio law). Thus, Valley Forge failed to assess the validity of its claim against FKI for breach of the duty to cooperate.  Valley Forge should have known that it had no reasonable justification for asserting such claim.  CC ¶¶58-73, 136-145, 165, 172.

- In an August 30, 2013 letter to CECO, Valley Forge admitted that FKI was potentially liable for damages alleged in the Valero Suit.  Thus, Valley Forge knew that it had a duty to defend the Valero Suit and has no reasonable justification for asserting that it did not.  CC ¶¶76-79, 174-176, 157-159.

- Valley Forge filed this suit under the auspices of a "coverage dispute" when Valley Forge really intends to use this litigation as means of strong-arming FKI to pay back defense costs, which Valley Forge had a duty to pay under the policies and which Valley Forge knows can and should be obtained from BFK and Valtech.  CC ¶¶ 163-164, 170-171, 177.  Moreover, FKI has made good faith efforts to work with Valley Forge to pursue these claims but Valley Forge has refused to respond.  CC ¶¶ 69, 166-169.

- Valley Forge's conduct with respect to FKI's insurance claim is not reasonably justified, arbitrarily and capriciously denies FKI the benefits FKI is due under the policies, consciously disregards FKI's rights, and has caused substantial harm to FKI.  CC ¶¶ 178-181.

FKI's Proposed Amended Counterclaims (attached hereto as Exhibit A) asserts the

following additional allegations concerning Valley Forge's bad faith:

- Valley Forge has engaged in bad faith claims handling by acting without reasonable justification with respect to the above-listed and below-listed actions. Proposed Amended Counterclaim ("ACC") ¶¶163, 170, 172, 174, 176, 180, 185, 189, 193, 195.

- Valley Forge instituted a strategy in this litigation designed solely to run up FKI's defense costs by, among other things, moving for summary judgment while FKI's motion to dismiss was still pending and then seeking discovery on the very issues

raised in Valley Forge's summary judgment motion, before FKI even filed its opposition to Valley Forge's summary judgment motion.  ACC ¶¶189-192.

- Valley Forge has displayed a complete lack of good faith with respect to the resolution of its claims. Valley Forge has refused to engage in meaningful settlement negotiations without a reasonable basis for doing so.  ACC ¶193.

- Valley Forge has acted arbitrarily and capriciously by engaging in the aforementioned conduct with respect to FKI's insurance claim, including but not limited to pursuing unsupported claims in this litigation without reasonable justification therefor, refusing to acknowledge tender of FKI's claims against BFK and Valtech, and refusing to engage in meaningful settlement negotiations to resolve Valley Forge's claims.  ACC ¶195.

- In engaging in the aforementioned conduct, Valley Forge has acted with actual malice by consciously disregarding FKI's rights where doing so had a great probability of causing substantial harm to FKI.  ACC ¶196.

- Valley Forge has suffered damages by way of Valley Forge's bad faith conduct, including but not limited to, incurring excess attorneys' fees in this action in order to respond to Valley Forge's unsupported claims and improper litigation tactics, having to bear by itself the costs of pursuing subrogation claims against BFK and Valtech, the cost of diverting internal resources (including employees' time and efforts) to addressing Valley Forge's improper litigation tactics, and lost investment income on amounts diverted to addressing Valley Forge's improper litigation tactics.  ACC ¶197.

## APPLICABLE LEGAL STANDARDS

### I.   Legal Standards Applicable to a Motion to Dismiss

As this Court stated in its September 3, 2015 Order:

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  To properly state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above the speculative level.'"  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Dkt. .#50 at 2-3 (citations omitted; emphasis added).  Similar considerations apply to a motion to

dismiss a counterclaim. *See, e.g.*, *Edizer v. Muskingum Univ.*, No. 2:11-cv-799, 2012 U.S. Dist.

LEXIS 140010, at *19-20 (S.D. Ohio Sept. 28, 2012). Additionally, since a "'motion under Rule 12(b)(6) is directed solely to the complaint itself,'" "extrinsic evidence cannot be considered in determining whether the complaint states a claim." *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 156 (6th Cir. 1983).[3]

## II.    Legal Standards Applicable to a Claim for Bad Faith

Under well-settled Ohio law, "an insurer has a duty to exhibit good faith toward its insured <u>as part of carrying out its duties</u> under a contract of insurance. 'Those responsibilities include the handling and payment of an insured's claim.'" *TOL Aviation, Inc. v. Intercargo Ins. Co.*, No. L-05-1308, L-06-1050, 2006-Ohio-6061, at P64, 2006 Ohio App. LEXIS 6008 (Ohio Ct. App. Nov. 17, 2006) (quoting *Unklesbay v. Fenwick*, 167 Ohio App. 3d 408, at P14 (Ohio Ct. App. 2006)) (emphasis in original). "However, an allegation of bad faith made for the way an insurer handled a claim for coverage 'is only met if the record shows that there were no circumstances in the case that created a reasonable justification for the insurer's actions.'" *Id.* (citation omitted). The policyholder is not required to prove any intent on the part of the insurance company. *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 399-400 (Ohio 1994).

A lack of good faith is the equivalent of bad faith. *TOL Aviation, Inc.*, 2006-Ohio-6061 at P64; *Roberts v. Personal Service Ins. Co.*, 12 Ohio App. 3d 92, 93 (Ohio Ct. App. 1983). While an insurance company's "'actions, considered separately'" may not constitute bad faith, an insurance company's <u>course of conduct</u> may constitute "'bad faith' by breaching its known duties to appellant '. . . through some ulterior motive or ill will partaking of the nature of fraud.'" *See id.* at 93-94 (citations omitted); *Spadafore v. Blue Shield*, 486 N.E.2d 1201, 1204 (Ohio Ct. App. 1985); *Rollert v. State Farm Mut. Auto. Ins. Co.*, No. 87-CA-15, 1987 Ohio App. LEXIS 10123, at *5-6 (Ohio Ct. App. Dec. 16, 1987); *Shultz v. Lincoln Nat'l Life Ins. Co.*, No. 69499,

---

[3] Accordingly, the Court should disregard Exhibits 2-4 and 6-7 submitted by Valley Forge in support of its motion because such documents are not referenced in FKI's counterclaims.

1996 Ohio App. LEXIS 5777, at *29 (Ohio Ct. App. Dec. 19, 1996); *World Harvest Church v. Grange Mut. Cas. Co.*, No. 09 CVH4-07-11327, 2012 Ohio Misc. LEXIS 283, at *18 (Ohio Ct. Comm. Pls. Dec. 16, 2012).

The duty of good faith continues despite the institution of coverage litigation. *Spadafore*, 486 N.E.2d at 1204. Moreover, "evidence of the breach of the insurer's duty to exercise good faith occurring after the time of filing suit is relevant so long as the evidence related to the bad faith or handling or refusal to pay the claim." *Id.*; *see also Motorists Mut. Ins. Co. v. Said*, 590 N.E.2d 1228, 1239 (Ohio 1992) (Douglas, J., dissenting); *Roberts*, 12 Ohio App. 3d at 93; *Shultz*, 1996 Ohio App. LEXIS 5777 at *29.[4]

## ARGUMENT

**I.  FKI Has Properly Alleged Detailed Factual Allegations Showing that Valley Forge Engaged in a Course of Conduct That, If Proven, Constitutes Bad Faith.**

Valley Forge's primary, yet flawed, argument is that FKI's bad faith claim should be dismissed because it is based solely on Valley Forge's filing the instant litigation. Br. at 1. This argument oversimplifies FKI's bad faith claim and overlooks abundant allegations concerning a variety of Valley Forge's conduct over the course of handling FKI's insurance claim, which amounts to bad faith under Ohio law. Construing these allegations in the light most favorable to FKI and drawing all reasonable inferences in FKI's favor, these allegations are sufficient to state a plausible claim for bad faith under Ohio law.

---

[4] Valley Forge's assertion that "post-litigation" conduct cannot be the basis of a bad faith claim is not an accurate representation of Ohio law. Br. at 13. All but one of the cases Valley Forge cites for this proposition were issued by non-6th Circuit and non-Ohio courts, therefore, they are not controlling. *See id.* (citing *Timberlake Constr. Co. v. U.S. Fidelity & Guar. Co.*, 71 F.3d 335 (10th Cir. 1995); *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512 (Ky. 2006)). The single case Valley Forge cites that was issued by a federal court in Ohio offers little guidance here as it concerned a motion to strike allegations of post-litigation conduct (not a motion to dismiss) and cited only non-Ohio cases with respect to the issue. *Helms v. Nationwide Ins. Co. of Am.*, 280 F.R.D. 354, 360-62 (S.D. Ohio 2012). Moreover, as the *Helms* court ultimately rendered its decision on other grounds, the court's discussion of the admissibility of post-litigation conduct was purely dicta. *Id.*

**A.      FKI Has Alleged that Valley Forge Engaged in Bad Faith by Ignoring Controlling Law And Key Facts And Evidence In Handling FKI's Insurance Claim And Filing This Coverage Suit.**

At the time Valley Forge filed this litigation, Valley Forge had actual knowledge of a lack of reasonable justification for several of its claims, yet it still brought this action against FKI with the ulterior motive of forcing FKI to pay money to Valley Forge that Valley Forge should obtain from third parties. Specifically, Valley Forge filed claims that it had no duty to defend FKI in the Valero Suit, that it had an implied-in-fact contract with FKI for the repayment of defense costs spent, and that FKI breached its duty to cooperate, without properly ascertaining whether there was any factual or legal support for its claims. *Cf. Perez v. CPS Foods Ltd.*, No. 5:14-cv-00490, 2015 U.S. Dist. LEXIS 124948, at *8-9 (N.D. Ohio Aug. 31, 2015) (Fed. R. Civ. P. 11 requires parties to ascertain whether representations in pleadings have factual and legal support prior to their presentation to the court). Because FKI's claims may be based on conduct occurring during coverage litigation,[5] and because FKI has included detailed and plausible allegations in its Counterclaim concerning these bad faith acts, the Court should deny Valley Forge's motion to dismiss.

**1.      Valley Forge Unreasonably Ignored Its Own Fatal Admissions as to FKI's Potential Liability in the Valero Suit.**

On August 30, 2013, Jonathan Domante (Valley Forge's claim handler at CNA) sent a letter to CECO, which discusses Valley Forge's legal analysis of the extent to which FKI assumed liability for the products at issue in the Valero Suit under the February 20, 2008 Asset

---

[5] *Spadafore*, 486 N.E.2d at 1204 (where bad faith claim was based on insurance company's refusal to pay claim during 2 ½ years of coverage litigation but then confessing judgment in court after three days of trial); Shultz, 1995 Ohio App. LEXIS 5777 at *29 (where plaintiff alleged that insurance company's proffer of altered documents in support of its defense in the litigation "rendered [plaintiff's] civil suit more difficult and added to the expense of the litigation"); *see also Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 302-303 (3d Cir. Pa. 2003) (where bad faith claim sustained by trial court was based on insurance company's litigation tactics including, among other things, "'[a] clear pattern of delay, stonewalling, deception, obfuscation and pretense'" and "'[a]ctively hiding highly probative documents while moving for summary judgment on the issues to which the hidden documents related'").

Purchase Agreement by and among CECO Environmental Corp., FKI Acquisition Corp., and Fisher-Klosterman Inc., William L. Heuman, Gerald J. Plappert, Jr. and Paul S. Brannick (the "APA"). CC ¶76.

> As alleged in the Counterclaims, Valley Forge's letter states that Valley Forge
>
> conclude[s] that FKI assumed responsibility for only one of the two possible contracts for products possibly at issue at the Paulsboro refinery. [Valley Forge] further conclude[s] that FKI did not assume the contracts for the products at issue in the Valero Suit at the Texas City and Houston refineries. As to the contract for products at issue at the St. Charles refinery, that contract was entered into after the APA and therefore, [Valley Forge] conclude[s] that FKI is responsible for the products which are the subject of the St. Charles contract.

CC ¶77 (quoting the August 30, 2013 Letter at 3-4).

The letter further states that Valley Forge "conclude[s] that BFK retained the liabilities for the products which are the subject of one contract at the Paulsboro refinery, the one contract at issue at the Texas City refinery, and both contracts at issue at the Houston refinery." CC ¶78 (quoting the August 30, 2013 Letter at 6).

FKI alleges that Valley Forge's statements in its August 30, 2013 letter constitute party admissions that Valley Forge believed that FKI was liable for one of the two contracts at issue in the Valero Suit for Valero's Paulsboro refinery as well as the contract for the St. Charles refinery. *See* Fed. R. Evid. 801(d)(2); CC ¶79, 175. FKI further alleges that the letter shows that Valley Forge <u>itself</u> believed that claims asserted in the Valero Suit were potentially covered by the policies. CC ¶176. And, importantly, Valley Forge had a duty to defend the <u>entire</u> Valero Suit until Valley Forge could prove that "all the claims are clearly and indisputably outside of the contracted policy coverage."[6] CC ¶83. Accepting these allegations as true and drawing all

---

[6] *City of Sharonville*, 846 N.E.2d at 837 ("Once an insurer must defend one claim within a complaint, it must defend the insured on all the other claims within the complaint, even if they bear no relation to the insurance-policy coverage" and the insurance company must defend) (citations omitted); *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St. 3d 177, 178-179 (Ohio 1984) (where "the allegations [in a complaint] do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage ha[s] been pleaded, the insurer <u>must</u> accept the defense of the claim")(emphasis added).

inferences in FKI's favor, these allegations state a plausible claim that Valley Forge acted

without reasonable justification in asserting that it did not have a duty to defend the Valero Suit

or that FKI should repay the defense costs incurred to defend FKI in the Valero Suit.

> **2.      Valley Forge Unreasonably Ignored Evidence Showing that FKI Rejected Valley Forge's Purported Reservation of the Right to Recoup.**

As alleged in the Counterclaims, Valley Forge also acted without reasonable justification

by failing to consider evidence that is dispositive to its implied-in-fact contract claim prior to

filing its Complaint and summary judgment briefing.  Specifically, Valley Forge willfully

ignored correspondence that FKI's prior coverage counsel sent to Valley Forge on April 13,

2013 that explicitly rejects Valley Forge's reservation of the right to recoup defense costs.[7]  CC

¶¶51-52, 173.  FKI alleges that this letter shows that there was no meeting of the minds as

required by Ohio law for a claim of implied-in-fact contract.  CC ¶¶109-111.  Accordingly,

Valley Forge knew when it filed this action that *United Nat'l Ins. Co. v. SST Fitness Corp.*, 309

F.3d 914 (6th Cir. 2002) is squarely distinguishable from the instant facts.  Moreover, it is not

only plausible, but highly likely, that Valley Forge was aware of this correspondence prior to

initiating this litigation, especially considering that its counsel in this proceeding was Valley

Forge's counsel with respect to the Valero Suit and represented Valley Forge in its dealings with

FKI and CECO.  ACC ¶186.

Valley Forge argues that it was not required to make FKI aware of the April 2013 letter

because the letter was written by FKI's own counsel.  Br. at 14.  But the real issue is that Valley

Forge ignored this dispositive evidence in asserting its claim and then either ignored or withheld

this evidence in moving for summary judgment.  Notably, Valley Forge does not argue that it did

not know about the letter.  Indeed, Valley Forge was aware of this evidence and purposefully

---

[7] The legal standards applicable to Valley Forge's implied-in-fact contract claim are set forth in FKI's Opposition and Cross-Motion at pages 17-18.  Dkt. #33.

failed to disclose this evidence to the Court.  As FKI has alleged, because Valley Forge knew of the letter, and knew that its implied-in-fact contract claim had no chance of success, Valley Forge acted without reasonable justification in asserting the claim in order to strong-arm FKI into repaying Valley Forge for costs that it does not owe.  CC¶173. Accepting these allegations as true and construing them in FKI's favor, FKI has stated a plausible claim for bad faith against Valley Forge.

> **3.      Valley Forge Unreasonably Ignored Evidence and Law Undermining Valley Forge's Claim that FKI Breached its Duty to Cooperate.**

In order to prove breach of the duty to cooperate under Ohio law, the insurance company must prove that the policyholder's lack of cooperation materially injured or seriously impaired the defense of the underlying litigation.[8]  CC ¶137.  FKI has alleged in its Counterclaims that Valley Forge cannot prove that FKI's alleged failure to cooperate materially injured or seriously impaired the defense of the Valero Suit because Valley Forge has admitted in its Complaint that "FKI effectively won the Valero Suit."  CC ¶¶139-140.  Valley Forge knew that this standard could not be met but has still pursued its claim for breach of the duty to cooperate.  CC ¶¶165-172; ACC ¶¶171-180.  Further, as FKI has alleged, the facts show that FKI fully cooperated with Valley Forge with respect to the Valero Suit.  CC ¶¶58-73, 142-145.  In short, FKI has sufficiently alleged that Valley Forge acted without reasonable justification by making unsupported allegations concerning a purported failure to cooperate on the part of FKI.  CC ¶172.  These allegations sufficiently state a claim for bad faith under Ohio law.

---

[8] These arguments concerning the duty to cooperate and supporting caselaw are set forth more fully at pages 4-5 of FKI's Proposed Surreply Brief. Dkt.# 43-1.

B.     **Valley Forge Acted Without Reasonable Justification In Failing To Even Respond To FKI's Tender Of The BFK Suit And FKI's Tender Of Its Rights To Claims Against Valtech.**

As FKI alleges, after repeatedly requesting that FKI pursue claims against BFK and Valtech and tentatively agreeing to pursue BFK and Valtech with FKI, Valley Forge acted without reasonable justification in failing to respond to FKI's tender of its claims against BFK and Valtech and reneging on its agreement to work with FKI to pursue BFK and Valtech for reimbursement of defense costs.  CC ¶¶166-171.  After FKI filed litigation against BFK to toll the statute of limitations on its indemnification claims and tendered the litigation to Valley Forge to pursue, Valley Forge did not respond <u>at all</u> - and still has not responded - to FKI's tender of the claim against BFK.  CC ¶167.  Valley Forge <u>still</u> has not offered any explanation as to its lack of response.  Indeed, all that Valley Forge says about this issue in its brief is the erroneous suggestion that the Court cannot consider this evidence because FKI filed the action against BFK after the instant litigation was initiated.  Br. at 9.[9]  However, Ohio law is clear that the Court can and should consider this evidence because it relates to FKI's allegations of bad faith.  *See Spadafore*, 486 N.E.2d at 1204; *Roberts*, 12 Ohio App. 3d at 93; *Shultz*, 1996 Ohio App. LEXIS 5777 at *29; *see also Said*, 590 N.E.2d at 1239 (Douglas, J., dissenting).[10]

_____

[9] Valley Forge also asserts that these allegations should not be considered because they are settlement negotiations.  Br at 14, n.3.  However, Fed. R. Evid. 408 does not prohibit the use of settlement negotiations so long as they are not offered to prove liability for the loss but are offered to prove bad faith.  *See Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000) ("Although evidence of conduct during settlement negotiations generally is inadmissible to prove a party's liability for the underlying claim, it may be admitted 'when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.'")(quoting Fed.R.Evid. 408); *Said*, 590 N.E.2d at 1239 (Douglas, J., dissenting).  The case Valley Forge cites on this point does not disagree with this proposition and it further does not address this precise issue – rather, it addressed the scope of discoverability of settlement communications between the policyholder and third party insurance companies.  *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. 2:06-CV-899, 2007 U.S. Dist. LEXIS 42142, *11-16 (S.D. Ohio June 11, 2007).

[10] FKI also has alleged, or proposes to allege in its Amended Counterclaims, that Valley Forge has engaged in additional bad faith conduct.  First, FKI proposes to allege that Valley Forge engaged in litigation tactics merely to cause financial harm and increased expense to FKI, by, for example, moving for summary judgment while FKI's motion to dismiss was still pending and then seeking discovery on the very issues raised in the summary judgment motion, before FKI even filed its opposition to Valley Forge's summary judgment motion.  ACC ¶¶189-193.  Additionally, Valley Forge has refused to engage in settlement discussions to attempt to resolve its claims without

II.     **Ohio Law Is Clear That An Insurance Company May Be Held Liable For Bad Faith Claims Handling Even When It Does Not Deny Its Policyholder's Claim.**

Valley Forge incorrectly argues that FKI has not alleged a claim for bad faith because it did not allege that Valley Forge "actually denied or refused to pay the Valero settlement amount." Br. at 5-6. This argument has been rejected by a number of courts and most recently by the Northern District of Ohio in *Brit Ins. Holdings N.V. v. Krantz*, No. 1:11 CV 948, 2012 U.S. Dist. LEXIS 1398, at *17 (N.D. Ohio Jan. 5, 2012), where the U.S. District Court denied the insurance company's motion to dismiss the policyholder's counterclaim for bad faith. There the insurance company argued that the policyholder's bad faith counterclaim should be dismissed because "no such claim exists in the insurance context as a matter of Ohio law unless an insurance claim is actually denied by the insurer." *Id.* at *14. In *Krantz*, the insurance company had defended the policyholder in the underlying litigation and paid for settlement, but then filed a declaratory judgment action against its policyholder to recoup amounts spent on the defense and settlement. The policyholder argued that part of the insurance company's bad faith was that the insurance company "merely fronted the funds for settlement, knowing that they would commence a lawsuit against KJK to recover those funds." *Id.* at *17 (quotation omitted).

While Valley Forge did indeed deny coverage for the settlement of the Valero Suit, here, similar to *Krantz*, FKI's bad faith claim is not based on Valley Forge's refusal to indemnify FKI and FKI has chosen not to seek recovery from Valley Forge for the settlement with Valero.[11] Accordingly, FKI need not allege that Valley Forge denied its claim in order to survive a motion to dismiss. *See Krantz*, 2012 U.S. Dist. LEXIS 1398, at *17; *TOL Aviation, Inc. v. Intercargo*

---

reasonable justification. ACC ¶193. All of this conduct further supports that Valley Forge acted in disregard of FKI's interests and rights under the insurance policies.

[11] Although FKI's claim is based on the bad faith handling of its insurance claim, as FKI has alleged, Valley Forge actually did refuse to pay for or consent to the settlement between FKI and Valero. CC ¶¶9, 101, 147-148, 162. Additionally, as FKI has alleged, Valley Forge brought a prior coverage suit in which Valley Forge asserted repeatedly that there was no coverage for the Valero Suit. CC ¶74.

*Ins. Co.*, No. L-05-1308, L-06-1050, 2006 Ohio App. LEXIS 6008, at *29-30 (Ohio Ct. App.

Nov. 17, 2006); *Jay v. Mass. Cas. Ins. Co.*, 2008-Ohio-846 (Ohio Ct. App. Feb. 27, 2008)("The

duty of good faith extends beyond those scenarios involving an outright denial of payment for a

claim."); *Unklesbay v. Fenwick*, 855 N.E.2d 516, 520-521 (Ohio Ct. App. 2006).  Due to this

established precedent and contrary to Valley Forge's arguments, whether or not FKI pursues a

breach of contract claim against Valley Forge has no bearing on its bad faith claim.[12]

### III.    FKI Is Not Judicially Estopped From Asserting That Valley Forge's Admissions Show That There Is Coverage For The Defense Of The Valero Suit.

In what can best be described as a red herring, Valley Forge argues that FKI should be

estopped from arguing that it was liable for damages at issue in the Valero Suit.  Br. at 8-9.

FKI's bad faith claim is not predicated on whether it was actually liable for damages alleged in

the Valero Suit in this litigation.  Rather, FKI seeks to rely on Valley Forge's admissions in its

August 2013 letter to show that prior to filing this litigation, Valley Forge *was aware of facts*

supporting that it had a duty to defend FKI in the Valero Suit, but still chose to file this litigation

arguing that it had no duty to defend, a position which Valley Forge's admissions completely

undermines.

Judicial estoppel further does not apply here because there was never a determination in

the Valero Suit as to insurance coverage issues.  *See Environmental Exploration Co. v.*

*Bituminous Fire & Marine Ins. Co.*, No. 1999CA00315, 2000 Ohio App. LEXIS 4985, at *15

---

[12] Valley Forge asserts that FKI must allege a prima facie claim for breach of contract in order to assert bad faith. Br. at 10-11.  However, there is no such requirement under Ohio law.  *See Wiseman v. Universal Underwriters Ins. Co.*, 412 F. Supp. 2d 801 (S.D. Ohio 2005) ("The breach of the duty to act in good faith will give rise to a cause of action in tort against the insurer irrespective of any liability arising from breach of contract.") (citation omitted); *Staff Builders, Inc. v. Armstrong*, 37 Ohio St. 3d 298 (Ohio 1988) ("'The liability of the insurer in such cases does not arise from its mere omission to perform a contract obligation, for it is well established in Ohio that it is no tort to breach a contract, regardless of motive.' Rather, the liability arises from the breach of the positive legal duty imposed by law due to the relationships of the parties.") (citations omitted).  Additionally, contrary to Valley Forge's assertions (Br. at 6), since there is no need for FKI to allege that Valley Forge's filing of this litigation constitutes a denial of coverage, *Arrowood Indem. Co. v. Lubrizol Corp.*, No. 1:10 cv 2871, 2011 WL 3490268, 2011 U.S. Dist. LEXIS 88480, at *12 (N.D. Ohio Aug. 10, 2011) is inapplicable.

(Ohio Ct. App. Oct. 16, 2000) (finding that insurance company not collaterally estopped from challenging consent judgment in underlying case because "issues concerning the application and interpretation of the terms, conditions and exclusions of the insurance policy" were not litigated in underlying action); *ALD Concrete & Grading Co. v. Chem-Masters Corp.*, 111 Ohio App. 3d 759, 766 (Ohio Ct. App. 1996) ("The application of the terms of the insurance policy to the facts of this case, in the context of the prior finding of negligence in the underlying action, was an issue left unresolved in the prior proceeding and thus not subject to collateral estoppel.").

Indeed, whether or not FKI was found liable in the Valero Suit is irrelevant to whether Valley Forge had a duty to defend FKI. Ohio law is clear that the duty to defend "persists regardless of the outcome of the underlying lawsuit" and continues through a determination that the policyholder was not liable. *Amerisure Ins. Co. v. Acusport Corp.*, No. 2:01-cv-683, 2004 U.S. Dist. LEXIS 6901, at *4 (S.D. Ohio Jan. 30, 2014) (squarely rejecting insurance company's argument that "because there was no coverage for the loss [at issue], there was no corresponding duty to defend [the policyholder] in the underlying suit."); *Grange Mut. Cas. Co. v. Rosko*, 767 N.E.2d 1225, 1234 (Ohio Ct. App. 2001) (calling "specious" insurance company's argument that it "was absolved of any duty to [defend the insured] when a jury resolved that he was not negligent in connection with the accident that caused plaintiffs' injuries") (citing *Preferred Mut. Ins. Co. v. Thompson*, 23 Ohio St. 3d 78, 80, 491 N.E.2d 688 (Ohio 1986)). *See also Wanless v. Hawkins*, No. C112-2587, 2014 Ohio Misc. LEXIS 71, at *14-15 (Ohio Ct. Com. Pls. July 9, 2014) (finding that insurance company had duty to defend policyholder with respect to the allegations in the underlying complaint even though court granted summary judgment for policyholder in the underlying action). Accordingly, FKI is not judicially estopped from relying on Valley Forge's admissions in its August 2013 letter concerning FKI's potential liability for the Valero Suit.

**IV.    Valley Forge's Argument That FKI Waived Arguments Concerning Valley Forge's Admissions In Valley Forge's August 30, 2013 Letter Is Meritless.**

Valley Forge argues that FKI should be precluded from relying on the August 2013 letter in its bad faith counterclaim because FKI did not specifically address the letter in its opposition to Valley Forge's motion for summary judgment and cross-motion for summary judgment. Br. at 8. This argument is simply preposterous. Against this Court's recommendation, Valley Forge chose to move for summary judgment at a very early stage in this litigation, far prior to FKI filing its answer and counterclaims. Valley Forge's premature filing of its summary judgment motion does not foreclose FKI's ability to plead its claims and develop the record. Although Valley Forge cited the August 30, 20132013 letter in its summary judgment reply and in its complaint, it willfully omitted the significant admissions contained therein concerning Valley Forge's analysis of FKI's liability for damages alleged in the Valero Suit.

Moreover, despite the August 30, 2013 letter having been submitted by Valley Forge in support of its motion, the letter and the facts represented therein must be construed most favorably to FKI. *See Amerisure Ins. Co. v. Acusport Corp.*, No. 2:01-cv-683, 2004 U.S. Dist. LEXIS 6901, at *4 (S.D. Ohio Jan. 30, 2014) (on a summary judgment motion, "'the [evidence submitted] must be viewed in the light most favorable to the opposing party.' Inferences to be drawn from the underlying facts contained in such materials must also be considered in the light most favorable to the party opposing the motion.") (citations omitted; alterations in original). This means that the Court must consider Valley Forge's admissions in the letter in FKI's favor when deciding the pending motions for summary judgment and find in favor of FKI with respect to its cross-motion concerning Valley Forge's duty to defend the Valero Suit.[13]

---

[13] The case Valley Forge cites for this proposition (Br. at 8, n.2) only considers whether new arguments raised in a reply brief should be considered in support of a motion for summary judgment. *Hunt v. Big Lots Stores, Inc.*, 244 F.R.D. 394, 397 (N.D. Ohio 2007). As the case does not address the unusual procedural posture of this case, it is of no guidance here.

**V.      FKI Has Sufficiently Alleged A Claim For Punitive Damages.**

As stated by the Supreme Court of Ohio, "'[p]unitive damages may be recovered against an insurer that breaches its duty of good faith in refusing to pay a claim of its insured upon proof of actual malice, fraud or insult on the part of the insurer.'" *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 402 (Ohio 1994) (citation omitted) (affirming award of punitive damages where the record showed that the insurance company failed to conduct an adequate investigation into who was at fault for the policyholder's fire loss).  "'Actual malice' is defined as '(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.'" *Id.* (citation omitted).

"When there is bad faith or malicious conduct, '… the jury may, in their estimate of compensatory damages, take into consideration and include reasonable fees of counsel employed by the plaintiff in the prosecution of his action.'"  *Brown v. Guar. Title & Trust/Arta*, 1996 Ohio App. LEXIS 3812, at *13 (Ohio Ct. App. May 28, 1996)(rejecting insurance company's argument that "the jury award of $ 31,891.53 in attorneys fees was improper because attorneys fees are only recoverable where an award of punitive damages is warranted and punitive damages were neither awarded nor warranted in the instant case"); *Scheetz v. Aho*, 1998 Ohio App. LEXIS 2498, at *8 (Ohio Ct. App. May 18, 1998) ("When there is a finding of bad faith, attorney fees may be included in considering compensatory damages.").

FKI has made sufficient allegations to withstand Valley Forge's motion to dismiss FKI's claims for compensatory damages and punitive damages.  CC ¶¶152-181.  FKI specifically has alleged that Valley Forge has acted in conscious disregard of FKI's rights by filing this litigation (CC¶180) and FKI will allege in its Amended Counterclaims that Valley Forge consciously disregarded FKI's rights by its other bad faith actions.  ACC ¶¶195-196.  FKI has suffered

damages due to Valley Forge's conduct. Such damages include excess attorneys' fees incurred in defending against Valley Forge's unsupported claims and untoward litigation tactics designed to increase the costs of defending this litigation, as well as FKI's having to bear by itself the cost of initiating litigation against BFK, the cost of diverting internal resources (including employees' time) to addressing Valley Forge's improper litigation tactics, and lost investment income on amounts diverted to addressing Valley Forge's improper litigation tactics.  ACC ¶197. Additionally, FKI is entitled to discovery from Valley Forge in order to further substantiate its claim that Valley Forge acted in bad faith. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").  Accordingly, the Court should deny Valley Forge's motion to dismiss FKI's claims for compensatory and punitive damages.

**VI.    Alternatively, The Court Should Grant FKI Leave to Amend its Counterclaim for Bad Faith.**

"Rule 15(a) creates a liberal policy in favor of granting leave to amend and is meant to 'reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings.'" *Johnson v. Apple, Inc.*, No. 3:13-CV-204, 2014 U.S. Dist. LEXIS 6390, at *9 (S.D. Ohio Jan. 17, 2014) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)) (granting leave to amend complaint in response to motion to dismiss).  It is within the District Court's discretion whether to grant or deny leave to amend in response to a motion to dismiss.  *Id.* at *9. "Nonetheless, courts must consider factors such as whether the amendment is 'brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'"  *Id.* (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)). "'A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.'" *Id.* (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

To the extent the Court finds that FKI's bad faith claim is deficient, the Court should grant FKI leave to file its Proposed Amended Counterclaims.  FKI's Proposed Amended Counterclaims further substantiates FKI's bad faith counterclaim and seeks to correct any pleading technicalities with respect to such claim.  ACC ¶¶152-198.  As the amendment is being proposed in response to Valley Forge's motion to dismiss, it has not been made in bad faith or to delay this proceeding.  Nor would the amendment be futile as FKI has demonstrated here that its proposed amendment would survive a motion to dismiss.  *Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir. 1980).

<u>**CONCLUSION**</u>

For all of the reasons set forth herein, FKI respectfully requests that the Court deny Valley Forge's motion to dismiss FKI's counterclaim for bad faith.  In the alternative, FKI

requests that the Court grant FKI's motion for leave to amend its counterclaim for bad faith as

set forth in Exhibit A.

Dated:   November 19, 2015

By:   */s/ Matthew A. Rich*
   _____
   Matthew A. Rich, Esq. (0077995)
   KATZ TELLER
   255 East Fifth Street, 24th Floor
   Cincinnati, Ohio  45202
   Telephone: (513) 977-3475
   mrich@katzteller.com

   Darin J. McMullen, Esq.
   Pamela D. Hans, Esq.
   ANDERSON KILL P.C.
   1600 Market Street, Suite 2500
   Philadelphia, PA  19103
   Telephone:  (267) 216-2700
   phans@andersonkill.com
   dmcmullen@andersonkill.com

   Carrie Maylor DiCanio, Esq.
   ANDERSON KILL P.C.
   1251 Avenue of the Americas
   New York, New York 10020
   Telephone: (212) 278-1046
   cdicanio@andersonkill.com

   *Attorneys for Defendant*
   *FISHER KLOSTERMAN, INC.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 19, 2015 the foregoing document was electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to counsel of record registered to receive electronic service to:

> Kathryn M. Frost
> Elenius Frost & Walsh
> 333 South Wabash Avenue
> 25th Floor
> Chicago, IL 60604
> Email: kathryn.frost@cna.com
>
> Thomas B. Bruns
> Freund Freeze & Arnold - 1
> Fourth & Walnut Centre
> 105 E Fourth Street
> Suite 1400
> Cincinnati, OH 45202-4009
> Email: tbruns@ffalaw.com

   */s/ Matthew A. Rich*
Matthew A. Rich (007995)

KTBH: 4847-8206-1611, v. 1