# EXHIBIT 13

Plaintiff Valley Forge Insurance Company's Reply in Further Support of its Motion to Dismiss Count VI (Bad Faith) of Defendant Fisher Klosterman, Inc.'s Counterclaim

ISSUERDIRECT

# SECURITIES & EXCHANGE COMMISSION EDGAR FILING

Form: 10-K

Date Filed: 2015-03-18

Corporate Issuer CIK: 3197

© Copyright 2015, Issuer Direct Corporation. All Right Reserved. Distribution of this document is strictly prohibited, subject to the terms of use.

<u>Table of Contents</u>

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## FORM 10-K

(Mark one)

x  Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934
For the fiscal year ended December 31, 2014

or

☐  Transition Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934
For the transition period from       to
Commission File No. 0-7099

# CECO ENVIRONMENTAL CORP.

| | |
|---|---|
| Delaware | 13-2566064 |
| (State or other jurisdiction of Incorporation or organization) | (I.R.S. Employer Identification No.) |

4625 Red Bank Road
Cincinnati, Ohio         45227
(Address of principal executive offices)    (Zip Code)

Registrant's telephone number, including area code: (513) 458-2600

Securities registered under Section 12(b) of the Act:

| Title of Each Class | Name of Each Exchange on Which Registered |
|---|---|
| Common Stock, $0.01 par value per share | The NASDAQ Stock Market LLC |

Securities registered under Section 12(g) of the Act:  None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.  Yes ☐  No x

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.  Yes ☐  No x

Indicate by check mark whether the Registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.  Yes x  No ☐

Indicate by check mark whether the Registrant has submitted electronically and posted on its corporate website, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).  Yes x  No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of Registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.  ☐

Indicate by check mark whether the Registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (check one)

Large Accelerated Filer ☐    Accelerated Filer x    Non-Accelerated Filer ☐    Smaller reporting company ☐

Indicate by check mark whether the Registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).  Yes ☐  No x

The aggregate market value of voting and non-voting common stock held by non-affiliates of the registrant was $254.1 million based upon the closing market price and shares of common stock outstanding as of June 30, 2014. For the purpose of the foregoing calculation only, all directors and executive officers of the registrant and owners of more than 10% of the registrant's common stock are assumed to be affiliates of the registrant. This determination of affiliate status is not necessarily conclusive for any other purpose.

As of March 4, 2015, the registrant had 26,410,085 shares of common stock, par value $0.01 per share, outstanding.

Documents Incorporated by Reference

Portions of the definitive Proxy Statement for the 2015 Annual Meeting of Stockholders, which is to be filed with the Securities

and Exchange Commission within 120 days of the fiscal year ended December 31, 2014, are incorporated by reference into Part III of this Annual Report to the extent described herein.

Case: 1:14-cv-00792-MRB Doc #: 58-4 Filed: 11/30/15 Page: 5 of 7  PAGEID #: 2558

Table of Contents

## CECO Corporation and Subsidiaries
### ANNUAL REPORT ON FORM 10-K
### For the year ended December 31, 2014
### TABLE OF CONTENTS

| Item | Description | Page |
|---|---|---|
| PART I. | | |
| Item 1. | Business | 2 |
| Item 1A. | Risk Factors | 14 |
| Item 1B. | Unresolved Staff Comments | 26 |
| Item 2. | Properties | 27 |
| Item 3. | Legal Proceedings | 28 |
| Item 4. | Mine Safety Disclosures | 28 |
| PART II. | | |
| Item 5. | Market for the Registrant's Common Equity, Related Stockholder Matters and Issuer Purchases of Equity Securities | 29 |
| Item 6. | Selected Financial Data | 31 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 32 |
| Item 7A. | Quantitative and Qualitative Disclosures About Market Risk | 52 |
| Item 8. | Financial Statements and Supplementary Data | 52 |
| Item 9. | Changes in and Disagreements with Accountants on Accounting and Financial Disclosure | 53 |
| Item 9A. | Controls and Procedures | 53 |
| Item 9B. | Other Information | 56 |
| PART III. | | |
| Item 10. | Directors, Executive Officers and Corporate Governance | 57 |
| Item 11. | Executive Compensation | 57 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 57 |
| Item 13. | Certain Relationships and Related Transactions, and Director Independence | 57 |
| Item 14. | Principal Accountant Fees and Services | 58 |
| PART IV. | | |
| Item 15. | Exhibits and Financial Statement Schedules | 58 |
| SIGNATURES | | 61 |

## CECO ENVIRONMENTAL CORP. AND SUBSIDIARIES
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)
## For the Years Ended December 31, 2014, 2013 and 2012

this plan, employees can contribute up to 25% of their compensation to the Plan. The Company will match up to 50% of the employee's contribution up to 4% of compensation, plus an additional discretionary contribution ranging from 2% to 4%, based on age and years of service. The Company provided cash contributions to this legacy Met-Pro 401(k) profit sharing plan of $0.2 million for the four months ended December 31, 2013. Effective January 1, 2014, this was merged into the CECO 401(k) retirement savings plan.

### 12. Commitments and Contingencies

#### Rent

We lease certain facilities on a year-to-year basis. We also have future annual minimum rental commitments under noncancellable operating leases as follows:

| (Table only in thousands) December 31, | Commitment |
|---|---|
| 2015 | $ 3,568 |
| 2016 | 2,895 |
| 2017 | 2,055 |
| 2018 | 1,658 |
| 2019 | 696 |
| 2020 and thereafter | 3,386 |
| | $ 14,258 |

Total rent expense under all operating leases for 2014, 2013 and 2012 was $2.9 million, $2.5 million and $1.8 million, respectively.

#### Legal Proceedings

Our subsidiary, Met-Pro, beginning in 2002 began to be named in asbestos-related lawsuits filed against a large number of industrial companies including, in particular, those in the pump and fluid handling industries. In management's opinion, the complaints typically have been vague, general and speculative, alleging that Met-Pro, along with the numerous other defendants, sold unidentified asbestos-containing products and engaged in other related actions which caused injuries (including death) and loss to the plaintiffs. Counsel has advised that more recent cases typically allege more serious claims of mesothelioma. The Company's insurers have hired attorneys who, together with the Company, are vigorously defending these cases. Many cases have been dismissed after the plaintiff fails to produce evidence of exposure to Met-Pro's products. In those cases where evidence has been produced, the Company's experience has been that the exposure levels are low and the Company's position has been that its products were not a cause of death, injury or loss. The Company has been dismissed from or settled a large number of these cases. Cumulative settlement payments from 2002 through December 31, 2014 for cases involving asbestos-related claims were $0.8 million which together with all legal fees other than corporate counsel expenses, have been paid by the Company's insurers. The average cost per settled claim, excluding legal fees, was approximately $25,000.

Based upon the most recent information available to the Company regarding such claims, there were a total of 195 cases pending against the Company as of December 31, 2014 (with Connecticut, New York, Pennsylvania and West Virginia having the largest number of cases), as compared with 173 cases that were pending as of January 1, 2014. During 2014, 51 new cases were filed against the Company, and the Company was dismissed from 29 cases and settled zero cases. Most of the pending cases have not advanced beyond the early stages of

Case: 1:14-cv-00792-MRB Doc #: 58-4 Filed: 11/30/15 Page: 7 of 7 PAGEID #: 2560

Table of Contents

## CECO ENVIRONMENTAL CORP. AND SUBSIDIARIES
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)
### For the Years Ended December 31, 2014, 2013 and 2012

discovery, although a number of cases are on schedules leading to, or are scheduled for trial. The Company believes that its insurance coverage is adequate for the cases currently pending against the Company and for the foreseeable future, assuming a continuation of the current volume, nature of cases and settlement amounts. However, the Company has no control over the number and nature of cases that are filed against it, nor as to the financial health of its insurers or their position as to coverage. The Company also presently believes that none of the pending cases will have a material adverse impact upon the Company's results of operations, liquidity or financial condition.

On October 12, 2012 the Company received a letter from the Sheet Metal Workers' Local Union No. 80 ("the Union") alleging that the Company had completely withdrawn from the Union's Pension Trust Fund. The Company settled this claim with the Union and recorded $3.5 million of legal reserve expense in 2013.

One of our subsidiaries, FKI, was a defendant party in a products liability lawsuit filed in Harris County, Texas on August 23, 2010 by three Valero refining companies. The plaintiffs claimed that FKI (and its co-Defendants) used an allegedly defective refractory material included in cyclones it supplied to Valero that caused damages to refineries they own and operate. Plaintiffs claimed to have suffered property damages, including catalyst loss, regenerator repair costs, replacement part costs, damage to other property and business interruption loss. During 2014, the Company reached a settlement with the plaintiffs for $0.5 million and, accordingly, recorded a corresponding charge to operations. In addition, the Company reached an agreement with a supplier to recover $0.2 million related to this matter. The recovery was also recorded during 2014. The Company's insurer, who had paid for the legal defense in this matter, initiated a new case in the Southern District of Ohio against the Company seeking, among other things, recoupment of past legal costs paid. The Company is vigorously disputing this claim and believes the insurer had the duty to defend the Company.

On October 3, 2014, Viron International ("Viron") filed a complaint against us and our subsidiary, the Kirk and Blum Manufacturing Company ("Kirk & Blum"), in the United States District Court for the Western District of Texas (the "Court") seeking damages against us and Kirk & Blum for alleged breach of contract. After a trial on January 12, 2015, on February 27, 2015, the Court issued Findings of Fact and Conclusions of Law that provide that we and Kirk & Blum breached our contract with Viron and that Viron is entitled to damages in the amount of approximately $0.6 million plus attorneys' fees. Additionally, the Court concluded that we and Kirk & Blum are not entitled to an offset for the invoiced amounts of $0.2 million not paid by Viron under the contract. The Company is vigorously defending this claim and believes it has complied with the provisions of the contract.

The Company is also a party to routine contract and employment-related litigation matters and routine audits of state and local tax returns arising in the ordinary course of its business.

The final outcome and impact of open matters, and related claims and investigations that may be brought in the future, are subject to many variables, and cannot be predicted. In accordance with ASC 450, *Contingencies*, and related guidance, we record reserves for estimated losses relating to claims and lawsuits when available information indicates that a loss is probable and the amount of the loss, or range of loss, can be reasonably estimated. The Company expenses legal costs as they are incurred.

We are not aware of pending claims or assessments, other than as described above, which may have a material adverse impact on our liquidity, financial position, results of operations, or cash flows.