UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| VALLEY FORGE INSURANCE COMPANY, a Pennsylvania Corporation<br><br>Plaintiff,<br><br>vs.<br><br>FISHER KLOSTERMAN, INC., a Delaware Corporation<br><br>Defendant. | )<br>)<br>) Civil Action No.: 1:14-cv-792- MRB<br>)<br>) Judge Michael R. Barrett<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF VALLEY FORGE INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND COMPLAINT**

**I.  INTRODUCTION**

Valley Forge Insurance Company ("Valley Forge") seeks leave of this Court to amend its complaint to add allegations that FKI impaired Valley Forge's subrogation rights based on the agreement FKI entered into with Valtech Industries ("Valtech Agreement") releasing those rights.  Based on these same allegations, Valley Forge includes a breach of contract/ breach of common law duties cause of action in its proposed Amended Complaint.  That cause of action seeks damages of over $3 million in costs incurred by Valley Forge in the defense of FKI in the Valero Suit.  (New Count IV.)

In addition, Valley Forge adds/clarifies its alternative claims regarding its breach of the duty to cooperate claim and to add allegations that Fisher Klosterman, Inc.'s ("FKI") impaired Valley Forge's subrogation rights.

In particular, Valley Forge's proposed Amended Complaint supplements Counts I and II with allegations regarding FKI's failure to cooperate with Valley Forge, including FKI's failure

2

to assist Valley Forge in enforcement of FKI's rights against any person which may be liable to FKI for the Valero Suit. The result of FKI's failure to assist Valley Forge ultimately impaired Valley Forge's subrogation rights.

Valley Forge's request to amend its complaint is timely, will not unduly prejudice FKI, and is not made in bad faith. The majority of Valley Forge's new allegations relate to the Valtech Agreement which was produced to Valley Forge less than two (2) weeks ago. Further, in light of the new deadlines established in this case, FKI will not be unduly prejudiced by Valley Forge amending its complaint. Lastly, Valley Forge's proposed Amended Complaint is supported by both the facts and case law.

For the reasons set forth below, Valley Forge requests that this Court grant it leave, pursuant to Rule 15(a), to file its Amended Complaint.[1]

## II. FACTUAL BACKGROUND

On October 10, 2014, Valley Forge filed this lawsuit. (Doc # 1.) Thereafter, on February 20, 2015, this Court entered a scheduling order. (Doc # 25.) Pursuant to that Order, August 1, 2015 was the deadline to amend the pleadings with discovery closing on January 15, 2016. (*Id.*) However, in May 2015, this Court informally stayed all discovery in the case pending the outcome of disputed discovery issues. At the time discovery was stayed, no documents had been produced and no depositions had taken place.

Recently, in a letter dated February 11, 2016, this Court informed FKI's counsel that it intended to order the production of the Valtech Agreement. On February 17, 2016, FKI's counsel produced the Valtech Agreement to Valley Forge.

---

[1] Although there are currently cross-motions for summary judgment pending, those motions will not be impacted by Valley Forge's proposed amendments to its complaint.

3

On February 18, 2016, this Court established new deadlines in the case. (Minute Entry, 2/18/16.) August 31, 2016 is the deadline for the close of discovery with dispositive motions due 30 days thereafter. (*Id.*)

### III. LEGAL STANDARD

Rule 15 provides that "a party may amend its pleadings with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a). Courts interpret Rule 15(a) "as setting forth a 'liberal policy of permitting amendments to ensure the determination of claims on their merits.' " *Oleson v. United States,* 27 Fed. Appx. 566, 569 (6th Cir.2001) quoting *Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir.1987).

The decision to grant or deny leave to amend lies within the discretion of the district court. *Foman v. Davis,* 371 U.S. 178, 182 (1962). In exercising its discretion, the trial court may consider such factors as "undue delay, bad faith or dilatory motive on the part of a movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [and] futility of the amendment." *Id*. "A proposed amendment is futile where it would not withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th Cir.2015).

To survive a Rule 12(b)(6) motion to dismiss, a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly* at 556).

The court must "construe the complaint in a light most favorable to the plaintiff" and accept all well-pleaded allegations in the complaint as true. *Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir.2009). A complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988) (quotations omitted). Accordingly, a complaint fails to state a claim "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief." *Downie v. City of Middleburg Heights,* 301 F.3d 688, 693 (6th Cir.2002).

### IV. VALLEY FORGE'S PROPOSED AMENDMENTS TO ITS COMPLAINT ARE SUPPORTED BY THE LAW AND THE FACTS; ARE TIMELY MADE; AND FKI WILL NOT SUFFER ANY UNDUE PREJUDICE

#### A. Allegations Regarding Impairment Of Subrogation Rights Based On The Valtech Agreement

Valley Forge seeks to add, as an alternative claim, allegations to its Amended Complaint that FKI impaired/ destroyed Valley Forge's subrogation rights. Such allegations are supported by the case law and the facts.

Under Ohio law, subrogation clauses are valid, enforceable and pre-conditions to coverage. *Bogan v. Progressive Cas. Ins. Co.,* 521 N.E.2d 447 (Ohio 1988), overruled in part on other grounds by *Ferrando v. Auto-Owners Mutual Ins. Co.*, 781 N.E.2d 927, 929 (Ohio 2002). In *Bogan*, the Ohio Supreme Court stated:

> [A] right of subrogation * * * is a full and present right in and of itself wholly independent of whether a later judgment obtained by use of such right will be reduced to collection from the tortfeasor. * * * It is, therefore, both just and reasonable that an insurer require, as a precondition to coverage, not that such subrogation rights *will* result in reimbursement to the insurer, but that the injured party not compromise with the tortfeasor in such a way as to destroy the insurer's subrogation right. Such compromise clearly prejudices the present subrogation right of the injured party's insurer.

5

*Id*. at 455.

Ohio courts have consistently held that impairment of an insurer's subrogation rights by the insured is presumed prejudicial to the insurer, and such impairment will relieve the insurer from any obligation under the insurance contracts if the presumption is not overcome. *See Ferrando*, 781 N.E.2d 927, 929 (Ohio 2002) (insurer is relieved from obligation to provide coverage if insured breached subrogation clause and that breach prejudiced insurer; breach of subrogation provision is "presumed prejudicial to the insurer absent evidence to the contrary"); *Ruby v. Midwestern Indemnity Co.*, 532 N.E.2d 730 (Ohio 1988) ("It is well-settled in Ohio that by executing a release which precludes an insurer from exercising its subrogation rights an insured materially breaches his insurance contract and discharges his insurer from its obligation to provide coverage."); *Ballard v. Nationwide Insurance Co.*, No. 11 MA 122; 2013 WL 2456355 (Ohio App. May 30, 2013) (insurers' denial of claim did not constitute waiver of insurer's subrogation rights).[2]

---

[2] *See also McDonald v. Republic-Franklin Ins. Co,* 543 N.E.2d 456, 460 (Ohio 1989) (insured who destroys his insurer's subrogation rights without the insurer's knowledge is preclude from bringing action to recover benefits under the policy); *Lepley v. Hartford Acc. & Indem. Co.*, 174 F. Supp. 2d 656, 661 (N.D. Ohio 2001) (insured entered into settlement with tortfeasor without notice or consent to insurer thereby destroying insurer's subrogation rights and precluding coverage under the policy) *aff'd*, 334 F.3d 544 (6th Cir. 2003) (notice and subrogation clauses are valid and enforceable pre-conditions to coverage); *National Indemnity Co. v. Ryerson*, No. C2-01-0223, 2002 WL 34461322, *8 (S.D.Ohio May 7, 2002) (by releasing claims against tortfeasor, insured breached subrogation provision which is presumed prejudicial to insurer); *Ohio State Grange Mut. Ins. Co v. Shimandle*, No. 94-L-032, 1994 WL 642375 (Ohio App. Nov. 16, 1994) (insured's failure to provide notice to insurer prior to signing release constituted material breach of insurer's subrogation rights thereby voiding coverage under the umbrella policy); *Paskel v. Allstate Ins. Co*., No. 95-T-5270, 1996 WL 207680 (Ohio App. April 12, 1996) (breach of subrogation clause is material and precludes coverage); *Robinson v. Allstate Ins. Co*., No. 84666, 2004 WL 2980489 (Ohio App. Dec. 23, 2004) (insured breached subrogation clause and failed to rebut prejudice to insurer); *Hawkins v. True North Energy, LLC,* Nos. 2002-P-0098, 2002-P-0101, 2002-P-0102; 2004 WL 1433699 (Ohio App. June 25, 2004) ("make-whole" doctrine did not apply because insured impaired insurer's subrogation rights); *Decker v. Atl. Mut. Inc. Co.*, No. L-96-028, 1997 WL 243576 (Ohio App. May 9, 1997) (insured not entitled to benefits under policy because insured materially breached policy by releasing tortfeasor thereby destroying insurer's subrogation rights; it was immaterial that insurer had little chance of recovery from tortfeasor); *Nickschinski v. Sentry Ins. Co.*, 623 N.E.2d 660 (Ohio App. 1993) (same); *Back v. American States Ins. Co.*, NO. CA 15195, 1995 WL 643121 (Ohio App. Nov. 1, 1995) (same)

Subrogation can occur by agreement or by operation of law. *See Blue Cross & Blue Shield Mut. Of Ohio v. Hrenko*, 647 N.E.2d 1358 (Ohio 1995) ("The right of an insurer to be subrogated to the rights of the insured arises either from the right of conventional subrogation, that is subrogation by agreement between the parties, or equitable subrogation by operation of law.")

In its proposed Amended Complaint, Valley Forge alleges that FKI was to do nothing after a loss to impair Valley Forge's subrogation rights. (Exh. 1, Proposed Amended Complaint, ¶¶ 77, 140.) The policies specifically state:

> 8. Transfer Of Rights Of Recovery Against Others To Us
>
> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. **The insured must do nothing after loss to impair them**. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

(*Id*., ¶ 77.) (Emphasis added).

The facts set forth above as to Valley Forge's breach of cooperation claim equally apply to Valley Forge's impairment of its subrogation rights claim. In addition, Valley Forge alleges the following:

FKI and Valtech entered into the Valtech Agreement which became effective on September 30, 2014. (*Id*., ¶ 122, 155.) FKI executed the Valtech Agreement on October 13, 2014. (*Id*.) In March 2015, Valley Forge first learned of the existence of the Valtech Agreement through the filing of FKI's parent's 10-K SEC annual statement for the year ending in 2014. (*Id*., ¶¶ 124, 156.) And only after production of the Valtech Agreement in this case on February 17, 2016, pursuant to this Court's order, did Valley Forge first learn of the contents and terms of that Agreement. (*Id*., ¶¶ 127, 157.) In producing the Valtech Agreement, FKI designated the

Agreement "confidential" pursuant to the Protective Order entered in this case. (*Id.*, ¶¶ 126, 160.)

Prior to executing the Valtech Agreement, FKI did not inform Valley Forge that it was negotiating such agreement and did not seek Valley Forge's approval or consent to execute such agreement. (*Id.*, ¶¶ 123, 158.) Indeed, FKI never provided notice to Valley Forge of its intention to enter into the Valtech Agreement prior to execution of that Agreement. (*Id.*, ¶ 158.) FKI further never provided Valley Forge the opportunity to review, approve, or negotiate any of the terms of the Valtech Agreement. (*Id.*, ¶ 159.)

On its face, certain terms in the Agreement, and their application, lack clarity as applied to Valley Forge's subrogation rights against Valtech as it relates to Valley Forge's defense obligation. (*Id.*, ¶ 161.) Based on the lack of clarity of the Valtech Agreement, including the uncertainty of the application of terms contained in the Agreement, and FKI's clear contractual duty to "do nothing after loss to impair" Valley Forge's subrogation rights, FKI breached its contractual duty when it negotiated and executed the Valtech Agreement without any notice to Valley Forge, without the consent of Valley Forge, and without allowing Valley Forge the opportunity to review, negotiate and approve the terms of the Valtech Agreement. (*Id.*, ¶ 162.)

As a result of FKI's breach of its contractual duty to "do nothing after loss to impair" Valley Forge's subrogation rights, Valley Forge has suffered or will suffer substantial prejudice as a result of FKI's breaches including but not limited to, impairment of its subrogation rights against Valtech. (*Id.*, ¶ 163.) Based on the fact that FKI breached of its contractual duty to "do nothing after loss to impair" Valley Forge's subrogation rights, if Valley Forge had a duty to defend FKI, FKI voided coverage under the policies and therefore, Valley Forge had no duty to defend FKI in the Valero Suit. (*Id.*, ¶ 164.)

8

These allegations, and Valley Forge's additional allegations, also support Valley Forge's declaration of rights as to the duty to indemnify. (*Id.*, Count II, ¶181.) Further, the allegations which support a declaration that Valley Forge had no duty to defend FKI also support Valley Forge's new breach of contract and common law duties cause of action in its Amended Complaint. (*Id.*, Count IV., ¶¶ 197-198.) Pursuant to that cause of action, Valley Forge seeks damages of over $3 million in costs in the defense of FKI in the Valero Suit. (*Id.*, ¶ 201.)

Based on the case law and the foregoing allegations, Valley Forge's proposed Amended Complaint sufficiently states causes of action against FKI for impairment/ destruction of Valley Forge's subrogation rights that are plausible on their face.

B.  **Additional Allegations Regarding Breach Of The Duty To Cooperate**

In its Complaint, and now proposed Amended Complaint, Valley Forge alleges that the insurance contracts at issue require FKI to cooperate with Valley Forge and assist Valley Forge in enforcement of any rights against any person which may be liable to the insured. (Exh. 1, Proposed Amended Complaint, ¶¶ 77, 139.) Under Ohio law, "lack of cooperation may warrant cancellation of a policy or relieve an insurer of an obligation on a claim" if the insured's lack of cooperation "prejudice[s] material rights of the insurer." *Park-Ohio Holdings Corp. v. Liberty Mut. Fire Ins. Co.*, No. 1:15-CV-00943, 2015 WL 6661487, at *7 (N.D. Ohio Oct. 30, 2015) quoting *Gabor v. State Farm Mut. Auto. Ins. Co.*, 583 N.E.2d 1041, 1043 (Ohio App. 1990); *see also Valley Paint & Body v. Ins. Co. of Pennsylvania*, No. CA 2010–08–059; 2011 WL 947034 (Ohio App. 2011).

In its proposed Amended Complaint, Valley Forge adds/clarifies its allegations that FKI breached its duty to cooperate to include FKI's failure to assist Valley Forge in enforcement FKI's rights against any person which may be liable to FKI, and, in particular, FKI's rights

9

against both Valtech and BFK.

### 1. *Allegations Relating To Valtech*

Valley Forge alleges that FKI had entered into Purchase Orders with Valtech to fabricate and supply Actchem 85, the refractory material at issue in the Valero Suit. (Exh. 1, Proposed Amended Complaint, ¶¶ 87, 141.) Based on Paragraph 18 of the Terms and Conditions of certain Purchase Orders between FKI and Valtech, Valtech was to maintain product liability and comprehensive general liability insurance to protect FKI against any claims against FKI in connection with the production, sale or use of the goods sold. (*Id*., ¶¶ 89, 142.) The Purchase Orders further required Valtech to provide a certificate of insurance, evidencing the existence of insurance and naming FKI as an additional insured under a Vendor's Endorsement. (*Id*.) The minimum limit of insurance required was $1 million per occurrence. (*Id*.)

The Valley Forge insurance policies contain excess provision endorsements. (*Id*., ¶¶ 76, 143.) Those endorsements provide that if FKI is an additional insured under another insurance policy, that policy would provide primary coverage and the Valley Forge policies would provide excess coverage. (*Id*.) Based on the excess provision endorsements, Valley Forge alleges that Valtech and Valtech's insurance carriers had the responsibility to defend FKI in the Valero Suit. (*Id*., ¶ 144.)

The Purchase Orders further required Valtech to indemnify and hold FKI harmless against any claims, liability, damages, costs, expenses or losses (including reasonable attorneys' fees and expenses) arising out of or in connection with the sale or use of the goods, unless such claim or injuries are due solely and exclusively to the negligence of FKI. (*Id*., ¶¶ 90, 145.) Valtech agreed to assume, on behalf of FKI, the defense of any action at law or equity which may be brought against FKI upon any indemnification under that paragraph, or to pay upon

10

FKI's request the amount of any judgment entered against FKI in any such action.  (*Id*.)  The Purchase Orders also required Valtech to indemnify FKI for all costs, loss and expenses, including reasonable attorneys' fees and expenses, as a result of Valtech's breach of any term, condition or provision of the Purchase Orders.  (*Id*.)

Based on the provisions in the Purchase Orders, Valley Forge requested on numerous occasions that FKI:

a. tender the Valero Suit for defense and indemnification to Valtech's insurance carriers which insured Valtech from at least 2001 to the present;

b. provide Valley Forge with copies of the letters tendering the Valero Suit to Valtech's insurance carriers for defense and indemnity;

c. provide Valley Forge with copies of the certificates of insurance and the identity of Valtech's insurance carriers;

d. tender the Valero Suit for defense and indemnification to Valtech for defense and indemnity under the indemnification provisions;

e. provide Valley Forge with copies of the letters tendering the Valero Suit to Valtech for defense and indemnity; and

f. add Valtech as a third-party defendant in the Valero Suit.

(*See id*., ¶¶ 91, 93, 97, 105, 114, 146.)  However, FKI failed to timely tender the defense of the Valero Suit to Valtech and failed to add Valtech as a third-party defendant in the Valero Suit.  (*Id*., ¶¶ 104, 115, 147.)  FKI refused to comply with Valley Forge's requests because, among other reasons, FKI claimed such actions would interfere with FKI's business relationship with Valtech.  (*Id*., ¶¶ 104, 148.)  When FKI finally tendered the Valero Suit to Valtech, Valtech disclaimed any obligation to defend or indemnify FKI in the Valero Suit.  (*Id*., ¶¶ 107, 149.)

Then, in May, 2014, FKI first informed Valley Forge that Valtech was self-insured and that Valtech did not obtain general liability insurance naming FKI as an additional insured under

11

that policy, as required by the Purchase Orders entered into between FKI and Valtech for the products at issue in the Valero Suit. (*Id*., ¶¶ 117, 150.)

Due to FKI's failure to comply with Valley Forge's requests as to Valtech, Valley Forge was the entity that participated in the defense of FKI when it should have been Valtech, or Valtech's insurers, who should have shouldered that burden based on the promises in the Purchase Orders. (*Id*., ¶ 151.) As a result, Valley Forge suffered damages in excess of $3 million because FKI breached its duty to assist Valley Forge in the enforcement of FKI's rights. (*Id*.) Further, due to FKI's failure to timely comply with Valley Forge's requests, Valley Forge has suffered and will suffer substantial and actual prejudice, including but not limited to, impairment of its subrogation rights against Valtech. (*Id*., ¶ 152.)

Based on the forgoing, FKI breached the cooperation provisions contained in the policies, including but not limited to the duty to assist Valley Forge in the enforcement of its rights against Valtech, and therefore, Valley Forge is entitled to a declaration that it had no duty to defend FKI in the Valero Suit. (*Id*., ¶ 153.)

These allegations further support Valley Forge's request for a declaration of rights as to the duty to indemnify and Valley Forge's new breach of contract and common law duties cause of action in its Amended Complaint. (*Id*., Count II, ¶180; Count IV., ¶ 196.) Pursuant to that cause of action, Valley Forge seeks damages of over $3 million in costs in the defense of FKI in the Valero Suit. (*Id*., ¶ 201.)

Based on the case law and the foregoing allegations, Valley Forge's proposed Amended Complaint sufficiently states causes of action against FKI regarding breach of FKI's duty to cooperate, including its duty to assist Valley Forge in the enforcement of FKI's rights against any other entity, that are plausible on their face.

### 2. *Allegations Relating To BFK*

Valley Forge alleges that on February 20, 2008, CECO, FKI Acquisition (FKI) and Fisher Klosterman, Inc. (BFK) entered into an Asset Purchase Agreement. (*Id*., ¶¶ 99, 165.) Based on that Agreement, FKI Acquisition (FKI) agreed, *inter alia*, to assume certain assets and liabilities, and that Fisher Klosterman, Inc. (BFK) retained certain assets and liabilities. (*Id*.) Pursuant to the Asset Purchase Agreement, FKI did not assume the liabilities at issue in the Valero Suit for the Houston, Texas City and Paulsboro refineries. (*Id*., ¶¶ 100, 166.)

The Asset Purchase Agreement contained an indemnification provision. (*Id*., ¶¶ 101, 167.) That provision stated that Fisher Klosterman, Inc. (BFK) shall indemnify and hold harmless FKI Acquisition (FKI) from any and all losses, including liabilities, damages, suits, causes of action, and reasonable costs and reasonable expenses and any and all amounts paid in settlement of any of the aforementioned asserted against FKI Acquisition (FKI) resulting from any excluded liability. (*Id*.) The Agreement further stated that if FKI Acquisition (FKI) intended to seek indemnification for damages from Fisher Klosterman, Inc. (BFK) for claims asserted by a third party, FKI Acquisition (FKI) must promptly notify Fisher Klosterman, Inc. (BFK) in writing of the claims. (*Id*., ¶¶ 102, 168.)

Based on the provisions contained in the Asset Purchase Agreement and the fact that BFK retained liabilities for certain products at issue in the Valero Suit, Valley Forge requested on numerous occasions that FKI:

    a.    provide written notice to BFK as soon as practicable of the Valero Suit under Paragraph 8.05 of the Asset Purchase Agreement; and

    b.    demand that current counsel defending FKI in the Valero Suit file a third-party petition against BFK in the Valero Suit.

(*See id.*, ¶¶ 103, 106, 110, 113, 169.) FKI refused to timely tender the Valero Suit to BFK under the Asset Purchase Agreement and refused to add BFK as a third-party defendant in the Valero Suit. (*Id.*, ¶¶ 115, 170.)

On September 10, 2013, FKI finally tendered the Valero Suit to BFK for defense and indemnification. (*Id.*, ¶ 111.) In response to the tender, BFK stated that it did not have sufficient information to respond to FKI's demand. (*Id.*, ¶ 116, 171.) BFK also noted that "FKI has clearly failed to provide BFK with timely notice of FKI's intent to seek indemnification from BFK as required by the express terms of the APA." (*Id.*)

Due to FKI's failure to comply with Valley Forge's requests relating to BFK, Valley Forge was forced to defend BFK's products in the Valero Suit until Valero added BFK in the suit in March 2014. (*Id.*, ¶ 172.) By not acting on Valley Forge's requests, FKI unnecessarily increased the costs incurred by Valley Forge in defending the Valero Suit. (*Id.*) Further, due to FKI's failure to timely comply with Valley Forge's requests as to BFK, including the duty to assist Valley Forge in the enforcement of FKI's rights against BFK, Valley Forge has suffered and will suffer substantial and actual prejudice, including but not limited to, impairment of its subrogation rights against BFK. (*Id.*, ¶ 173.)

Based on the forgoing, FKI breached the cooperation provisions contained in the policies, including but not limited to the duty to assist Valley Forge in the enforcement of its rights against BFK, and therefore, Valley Forge is entitled to a declaration that it had no duty to defend FKI in the Valero Suit. (*Id.*, ¶ 174.)

These allegations further support Valley Forge's request for a declaration of rights as to the duty to indemnify and Valley Forge's new breach of contract and common law duties cause of action in its Amended Complaint. (*Id.*, Count II, ¶180; Count IV., ¶ 196.) Pursuant to that

cause of action, Valley Forge seeks damages of over $3 million in costs in the defense of FKI in the Valero Suit. (*Id*., ¶ 201.)

Based on the case law and the foregoing allegations, Valley Forge's proposed Amended Complaint sufficiently states causes of action against FKI regarding breach of FKI's duty to cooperate, including its duty to assist Valley Forge in the enforcement of FKI's rights against BFK, that are plausible on their face.

### C. Valley Forge's Motion Is Timely, Will Not Cause Undue Prejudice And is Made In Good Faith

Valley Forge's request to amend its complaint is timely. Less than two (2) weeks ago, FKI produced the Valtech Agreement to Valley Forge, as required by the Court. The majority of Valley Forge's new allegations relate to the Valtech Agreement.

Moreover, Valley Forge's request to amend its complaint will not cause undue prejudice to FKI. Discovery had been stayed in the case and the stay was only recently lifted. Prior to the stay, no documents had been produced and no depositions had taken place. The new deadlines recently established by this Court allow more than six (6) additional months for discovery. In addition, Valley Forge's proposed amendment will not impact the pending cross-motions for summary judgment. Accordingly, FKI has sufficient time to address Valley Forge's new allegations and therefore, will not be unduly prejudiced by the filing.

Lastly, Valley Forge's request is not made in bad faith. As set forth above, the case law supports Valley Forge's newly added allegations in its proposed Amended Complaint.

### V. CONCLUSION

WHEREFORE, for all the forgoing reasons, Valley Forge requests that this Court grant it leave, pursuant to Rule 15(a), to file its Amended Complaint.

Dated: February 29, 2016.

Respectfully submitted,

*/s/Thomas B. Bruns*
Thomas B. Bruns (0051212)
FREUND, FREEZE & ARNOLD
Fourth & Walnut Centre
105 East Fourth Street, Suite 1400
Cincinnati, OH 45202-4035
Phone: 513-665-3500
Fax: 513-665-3503
E-Mail: tbruns@ffalaw.com

and

Kathryn M. Frost (admitted *pro hac vice*)
ELENIUS FROST & WALSH
333 South Wabash Avenue, 25th Floor
Chicago, IL 60604
Telephone: 312-822-2659
Fax: 312-817-2486
E-Mail: Kathryn.Frost@cna.com

**ATTORNEYS FOR VALLEY FORGE INSURANCE COMPANY**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 29, 2016, I electronically filed Valley Forge Insurance Company's Memorandum In Support Of Its Motion for Leave To Amend Complaint with the Clerk of the Court by using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/Thomas B. Bruns*
Thomas B. Bruns (0051212)

16