UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VALLEY FORGE INSURANCE )
COMPANY, )
 )
           Plaintiff, )
 )
  -v- ) Civ. Action No. 1:14-cv-00792-MRB
 )
FISHER KLOSTERMAN, INC., )
 )
           Defendant. )
 )

## DECLARATION OF CARRIE MAYLOR DICANIO

I, Carrie Maylor DiCanio, Esq., declare as follows:

1.     I am an attorney at the law firm of Anderson Kill P.C., co-counsel of record for defendant Fisher Klosterman, Inc. ("FKI"). The following is set forth based on my own knowledge.

2.     I make this declaration in support of FKI's Opposition to Plaintiff Valley Forge Insurance Company's ("Valley Forge") Motion for Leave to Amend Complaint.

3.     Attached hereto as Exhibit 1 is a true and correct copy of a letter from Kathryn Frost, Esq., counsel for Valley Forge, to Carl Maio, Esq., counsel for FKI, dated July 18, 2014.

4.     Attached hereto as Exhibit 2 is a true and correct copy of Article VIII of the Asset Purchase Agreement by and between CECO Environmental Corp., FKI Acquisition Corp., and Fisher-Klosterman, Inc., William L. Heumann, Gerald J, Plappert, Jr., and Paul S. Brannick, dated February 20, 2008.

2

I declare under penalty of perjury that the foregoing is true, and that this Declaration was executed on the 24th day of March, 2016 in New York, New York.

                                                                            */s/ Carrie Maylor DiCanio*
                                                                              CARRIE MAYLOR DICANIO

# EXHIBIT 1

# ELENIUS FROST & WALSH

ATTORNEYS AT LAW

333 SOUTH WABASH AVE.
25TH FLOOR
CHICAGO, ILLINOIS 60604

(312) 822-6603 • FAX (312) 817-2486

KATHRYN M. FROST
ATTORNEY

DIRECT DIAL
(312) 822-2659

July 18, 2014

**Via E-Mail and U.S. Mail**

Carl Maio, Esq.
Fox Rothschild LLP
Stone Manor Corporate Center
2700 Kelly Road, Suite 300
Warrington, PA 18976

Re: Valero Refineries v. Fisher Klosterman, Inc., et al

Dear Carl:

Over the last few weeks, Fisher Klosterman, Inc. ("FKI") and Valley Forge Insurance Company ("Valley Forge") have discussed the issue of the right of recoupment of past legal costs incurred by Valley Forge, on FKI's behalf, in the defense of the Valero Suit in connection with the upcoming mediation in the Valero Suit..

Valley Forge believes that the contracts between Valtech and FKI require Valtech to pay for the costs incurred in defense of the Valero Suit. In addition, under our interpretation of the Asset Purchase Agreement between FKI and BFK, Valley Forge believes that BFK bears some responsibility for the past legal costs incurred in defending the Valero Suit.

As you further are aware, Valley Forge has taken the position that at the end of the day, a determination may be made that Valley Forge had no duty to defend FKI in the Valero Suit in the first instance and can recover all of the defense costs incurred to date from FKI. If this is the case, the right to recover against Valtech and BFK is FKI's rights. On the other hand, if it is determined that Valley Forge did have a duty to defend and cannot recoup its costs from FKI, the right to recover those past defense costs against Valtech and BFK is Valley Forge's right.

Although we have worked together with FKI over the last few weeks in an attempt to reach a consensus as to how to handle the past defense costs at the mediation, we did not reach an agreement. We therefore have informed FKI, Valtech and BFK's insurers that the past legal costs will not be at issue at the July 29, 2014 mediation. Those rights/ costs will be carved out of

Carl Maio, Esq.
July 18, 2014
Page 2

any settlement at the mediation and the responsibility as to those costs will be addressed after the mediation.

Currently, pursuant to the Valley Forge policy, the right to recoup the past costs from Valtech and BFK is Valley Forge's right. Specifically, the Valley Forge policy states:

> **8. Transfer Of Rights Of Recovery Against Others To Us**
>
> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us to help us enforce those rights.

We remind FKI that it is not authorized and cannot negotiate, waive, or settle the rights to the past legal costs without Valley Forge's prior consent.

Please let us know if you have any questions regarding the above.

Very truly yours,

ELENIUS FROST & WALSH

Kathryn M. Frost

# EXHIBIT 2

*Execution Copy*

# ASSET PURCHASE AGREEMENT

dated

**February 20, 2008**

between

**FISHER-KLOSTERMAN, INC., A KENTUCKY CORPORATION,**

**CECO ENVIRONMENTAL CORP.,**

and

**FKI ACQUISITION CORP.**

and joined in for limited purposes by

**WILLIAM L. HEUMANN, GERALD J. PLAPPERT, JR. and PAUL S. BRANNICK,**

the shareholders of **FISHER-KLOSTERMAN, INC.**

LOULibrary 701040v.6

*Execution Copy*

determining deductibles and co-payments under Buyer's Employee Benefit Plans with respect to Employees. Seller shall transfer to Buyer, and Buyer shall accept, sole sponsorship of the (i) Fisher-Klosterman, Inc. Group Health Insurance, subject to the insurer's approval of such transfer, and (ii) Fisher-Klosterman, Inc. Dental Insurance, Vision Insurance Plan, Short Term Disability Insurance, Long Term Disability Insurance, Life Insurance and Accidental Death and Dismemberment Insurance, all subject to the insurers' approval of transfer of such policies to Buyer. Nothing contained in this Agreement relating to the transfer of sponsorship of such plans or policies from the Seller to the Buyer shall limit or otherwise impair Buyer's rights under this Agreement in relation to Section 2.04 or 4.22 or otherwise in connection with this Agreement. No provision of this Agreement constitutes or shall give rise to, or shall be deemed to constitute or give rise to any rights or entitlements or benefits on the part of any employee, service provider or other third Person in connection with any such plan, program or other arrangement, or otherwise.

7.02 **WARN Act Compliance.** On and after the Effective Time, Buyer shall be responsible with respect to Employees and their respective beneficiaries for compliance with the WARN Act and any other similar Applicable Law, including any requirement to provide for and discharge any and all notifications, benefits, and liabilities to Employees and government agencies that might be imposed as a result of the consummation of the transactions contemplated by this Agreement or otherwise. Buyer shall not take any action after the Effective Time that would cause any termination of employment of any Employees to constitute a "plant closing" or "mass layoff" under the WARN Act or any similar Applicable Law that would result in liability or notice obligation to Seller or create any liability to Seller for employment terminations under Applicable Law. Subject to the terms of Article VIII, Buyer shall defend and indemnify Seller from any and all liability with respect to Buyer's non-compliance with the undertaking in the two preceding sentences which causes a violation of the WARN Act. Nothing in this Agreement constitutes an admission that a plant closing or mass layoff, or terms of similar import, as used by the WARN Act, has occurred or will occur.

## ARTICLE VIII

## SURVIVAL; INDEMNIFICATION

8.01 <u>Survival of Representations and Warranties and Time Limitation on Indemnification.</u> All of the representations and warranties set forth in this Agreement shall survive the Closing and the consummation of the transactions contemplated by this Agreement for a period of eighteen (18) months following the Effective Time. Notwithstanding the foregoing, the representations and warranties contained in Section 4.01 (Seller Existence and Power), Section 4.02 (Corporate Authority; Binding Agreement), Section 4.04 (Title to Purchased Assets) (excluding the last sentence of Section 4.04), Section 4.08 (Brokers' or Finders' Fees), Section 4.15 (Environmental Matters), Section 4.19 (Taxes), Section 5.01 (Buyer Existence and Power), Section 5.02 (Authorization; Binding Agreement) and Section 5.05 (Brokers' or Finders' Fees) shall survive until 30 days after the expiration of the applicable statute of limitations relating to the underlying claim. All covenants and agreements contained in this Agreement shall expire as appropriate, in accordance with their terms or at the expiration of the applicable statutes of limitation. If at any time on or prior to the applicable expiration

33

*Execution Copy*

date, a party delivers to the other party a written notice alleging a breach of any of the representations, warranties, covenants or agreements made by the receiving party and asserting a claim for indemnification under this Article VIII, then that claim shall survive the applicable expiration date until such time as such claim is fully and finally resolved. Notwithstanding the foregoing, a claim will not survive more than three (3) months following the applicable expiration date unless the party delivering the claim notice is reasonably pursuing the claim.

**8.02** **Indemnity by Seller.** Subject to the limitations in this Article VIII (including without limitation Section 8.07 hereof), Seller shall indemnify and hold harmless Buyer and its Affiliates, directors, officers, partners, agents, representatives, successors and permitted assigns (each, a "Buyer Indemnified Person" and collectively, the "Buyer Indemnified Persons") from and against any and all losses, Liabilities, damages, fines, penalties, suits, judgments or causes of action, assessments, reasonable costs and reasonable expenses (whether or not involving a Third Party Claim), and any and all amounts paid in settlement of any of the aforementioned (collectively, the "Buyer's Damages"), asserted against, imposed upon, or incurred or suffered by any Buyer Indemnified Person as a result of or arising from: (a) any Excluded Liability; (b) any inaccuracy in any representation or warranty of Seller contained in this Agreement; (c) any breach of any covenant or agreement by Seller contained in this Agreement, the Bill of Sale, the Assignment and Assumption Agreement, the Patent Assignment, the Trademark Assignment Agreement, the Domain Name Transfer Agreement or the certificate to be delivered pursuant to Section 3.02(m); or (d) the Schedule 4.14 Indemnification Amount (which amount, if payable pursuant to this Agreement, shall be paid directly by Seller and shall not be paid out of the Escrow Amount and shall not be subject to the limitation on indemnification set forth in Sections 8.07(a) and 8.07(b) below).

**8.03** **Indemnity by Buyer.** Subject to the limitations in this Article VIII, Buyer shall indemnify and hold harmless Seller, the Selling Shareholders and each of their Affiliates, directors, officers, stockholders, agents, representatives, successors and permitted assigns (each a "Seller Indemnified Person" and collectively, the "Seller Indemnified Persons" and, together with the Buyer Indemnified Persons, the "Indemnified Persons"), from and against any and all losses, Liabilities, damages, fines, penalties, suits, judgments or causes of action, assessments, reasonable costs and reasonable expenses (whether or not involving a Third Party Claim), and any and all amounts paid in settlement of any of the aforementioned (collectively, the "Seller's Damages" and together with Buyer's Damages, "Damages"), asserted against, imposed upon, or incurred or suffered by any Seller Indemnified Person, as a result of or arising from: (a) any Assumed Liability; (b) any inaccuracy in any representation or warranty of Buyer contained in this Agreement; or (c) any beach of any covenant or agreement by Buyer contained in this Agreement, the Bill of Sale, the Assignment and Assumption Agreement, the Patent Assignment, the Trademark Assignment Agreement, the Domain Name Transfer Agreement or the certificate to be delivered pursuant to Section 3.03(k).

**8.04** **Reduction and Mitigation of Damages.** For purposes of this Article VIII, all Damages shall be reduced dollar for dollar by: (a) the amount of any insurance proceeds actually received in connection with the circumstances giving rise to the claim for such Damages, in each case, which reduce such Damages that would otherwise be incurred; (b) the amount of any Tax benefits actually recognized (net of Tax costs incurred as a result of such indemnification

*Execution Copy*

payment) directly resulting from such Damages or expenses related thereto; and (c) the amount of any other payments made under this Article VIII that relate to the same facts and circumstances giving rise to the same claim for such Damages. Any party entitled to indemnification hereunder shall take reasonable steps to mitigate Damages upon and after becoming aware of any event that could reasonably be expected to give rise to such Damages. All parties shall use commercially reasonable efforts to make claims under available insurance policies and to pursue the collection of such amounts.

8.05 **Claims Procedure for Third Party Claims.**

(a) Any party (the "Claimant") that intends to seek indemnification for Damages from the other party (the "Defending Party") under this Agreement with respect to a Third Party Claim shall notify the Defending Party in writing promptly after learning of such claim. Such notice shall specify, to the extent known by the Claimant, the nature of and basis for any such Third Party Claim or the nature of and basis for any suit, action, investigation or proceeding set forth therein, the amount or the good faith estimated amount thereof (to the extent then estimable) and the basis of the third party's request for indemnification under this Agreement. The failure of the Claimant to promptly notify the Defending Party will not relieve the Defending Party of any Liability that it may have to the Claimant, except to the extent that the Defending Party demonstrates that the defense of such Third Party Claim is prejudiced by the Claimant's failure to promptly give such notice. "Third Party Claim" means any claim, demand, suit, action or Legal Proceeding by any Person, other than Seller or Buyer, which could reasonably give rise to a right of indemnification under this Article VIII.

(b) The Defending Party may undertake the defense of a Third Party Claim as to which the Claimant has notified the Defending Party by notice to the Claimant no later than thirty (30) days after receipt by Defending Party of the Claimant's notice of the Third Party Claim (but in no event later than such time as would result in the Claimant's rights being materially and adversely affected by a failure to give notice earlier). The Defending Party's notice must be in writing and must notify the Claimant (i) that the Defending Party will indemnify the Claimant, to the extent provided in this Agreement, from and against any Damages with respect to which such Claimant is entitled to indemnification under this Agreement, (ii) of the Defending Party's intention to assume such defense, and (iii) that it has retained legal counsel (which counsel must be reasonably satisfactory to the Claimant) to conduct the defense of such Third Party Claim. If the Defending Party undertakes the defense of any Third Party Claim, it shall control the investigation and defense thereof; *provided* that the Claimant will be entitled to participate in the defense of such Third Party Claim to the extent it reasonably deems appropriate (unless the Claimant is also party to such proceeding and the Defending Party determines in good faith that joint representation would be inappropriate). If the Claimant elects to participate in the defense of the claim, the Defending Party, so long as it diligently conducts such defense, will not be liable to the Claimant for any fees of other counsel or advisors retained by Claimant or any other expenses with respect to Claimant's defense of such claim unless (x) the Defending Party has, in its sole discretion, agreed to pay such fees and expenses, or (y) the Claimant has been advised by its counsel in good faith that there may be one or more defenses available to it which are different from or additional to those available to the Defending Party or that actual or potential conflicts of interest are likely to result from the

35

*Execution Copy*

Defending Party's defense of the Third Party Claim. In such case, that portion of the fees and expenses of such separate counsel that are reasonably related to the matters covered by the foregoing clauses (x) – (y) shall be paid by the Defending Party. If the Defending Party assumes the defense of a Third Party Claim without participation by the Claimant, no compromise or settlement of such Third Party Claim may be effected by the Defending Party without the Claimant's consent unless (1) there is no finding or admission of any violation of Applicable Law by Claimant, and (2) the sole relief provided is monetary damages that are paid in full by the Defending Party.

(c) If notice is given to a Defending Party of a Third Party Claim and the Defending Party does not, within thirty (30) days after the Claimant's notice is given, give notice to the Claimant of its election to assume the defense of such Third Party Claim or otherwise does not defend such Third Party Claim, then the Claimant shall control such investigation and defense, and the Defending Party will be bound by any determination made in such proceeding or any compromise or settlement effected by the Claimant with the consent of the Defending Party (which shall not be unreasonably withheld).

(d) Subject to the advice of counsel, Seller and Buyer shall make available to each other, their counsel and other representatives, the information and documents reasonably available to them which relate to any Third Party Claim, and otherwise cooperate as may reasonably be required in connection with the investigation and defense thereof. Seller and Buyer shall keep the other reasonably informed as to all developments with respect to any Third Party Claim.

8.06 **Claims Procedure for Direct Claims.** In the event that a Claimant intends to seek indemnification for Damages from a Defending Party that does not involve a Third Party Claim, the Claimant shall promptly notify the Defending Party in writing of such claim (the "Direct Claim Notice"). The Direct Claim Notice shall specify the nature of and specific basis for any such Indemnity Claim, the amount or the good faith estimated amount thereof (to the extent then estimable) and the basis of the Claimant's request for indemnification under this Agreement. The failure of the Claimant to promptly notify the Defending Party will not relieve the Defending Party of any Liability that it may have to the Claimant, except to the extent that the Defending Party demonstrates that the defense of such Indemnity Claim is prejudiced by the Claimant's failure to give such notice. If the Claimant does not notify the Defending Party within thirty (30) days from its receipt of the Direct Claim Notice that it disputes such Indemnity Claim, the Indemnity Claim(s) specified in the Direct Claim Notice will be deemed payable by the Defending Party hereunder. If the Defending Party has timely disputed such Indemnity Claim, the parties shall negotiate in good faith for a thirty (30) day period after receipt of the Direct Claim Notice to resolve such Indemnity Claim. If no resolution is reached within such thirty (30) day period, the dispute regarding the Indemnity Claim shall be resolved pursuant to Section 10.13 of this Agreement.

8.07 **Limitations on Indemnification.** The rights of the Buyer Indemnified Persons and of the Seller Indemnified Persons to indemnification hereunder are subject to the following limitations:

LOULibrary 701040v.6

*Execution Copy*

(a) <u>Basket for Aggregate Claims</u>. Buyer shall not be entitled to indemnification hereunder unless and until the aggregate amount of Buyer's Damages arising from qualifying claims for indemnification exceeds seventy five thousand dollars ($75,000). Seller shall only be liable for Buyer's Damages in excess of such amount.

(b) <u>Limitation of All Claims</u>. Buyer shall not be entitled to indemnification hereunder with respect to any claims under Section 8.02 to the extent the aggregate amount of Buyer's Damages exceeds $1,740,000 in the aggregate. Notwithstanding the foregoing, (i) the maximum amount of Buyer's Damages that may be recovered as a result of any breach of the representations and warranties contained in Section 4.01 (Seller Existence and Power), Section 4.02 (Corporate Authority; Binding Agreement), Section 4.04 (Title to Purchased Assets) (excluding the last sentence of Section 4.04) and Section 4.08 (Brokers' or Finders' Fees) shall not be limited to the foregoing amount, but shall be limited in the aggregate to the Purchase Price and (ii) the maximum amount of Buyer's Damages that may be recovered as a result of any breach of the representations and warranties contained in Section 4.15 (Environmental Matters) shall not be limited to the foregoing amount, but shall be limited in the aggregate to 62.5% of the Purchase Price. Notwithstanding anything in this Agreement to the contrary, the maximum amount of Buyer's Damages that may be recovered as a result of any breach of any representation or warranty pertaining to FKI, LLC or China Subsidiary shall be limited in the aggregate to $500,000. For all purposes of Articles VIII, Buyer Damages shall be net of (i) any insurance or other recoveries payable to Buyer Indemnified Person or its Affiliates in connection with the facts giving rise to the right of indemnification, and (ii) any tax benefit available to such Buyer Indemnified Person or its Affiliates arising in connection with the accrual, incurrence or payment of any such Buyer Damages (including, without limitation, the net present value, discounted at a 5% per annum rate of return, of any tax benefit arising in subsequent taxable years).

(c) <u>Relation to Escrow Amount</u>. All indemnification claims by the Buyer Indemnified Persons shall first be satisfied out of the Escrow Amount. The release of funds from the Escrow Amount shall be governed by the Indemnification Escrow Agreement, which shall provide that 50% of the escrowed funds shall be released after six months, net of any indemnification claims made prior to such date.

(d) <u>Expiration of Claims</u>. Any claim for indemnification hereunder that is not asserted by notice given as herein provided during the applicable period of survival as set forth in Section 8.01 may not be pursued and is hereby irrevocably waived upon the expiration of the applicable survival period.

**8.08** <u>**Tax Treatment of Indemnification**</u>. For all Tax purposes, Buyer and Seller shall treat any amount paid pursuant to this Article VIII as an adjustment to the Purchase Price and shall also revise the Allocation Schedule in accordance with Section 6.02, except as otherwise required by Applicable Law.

**8.09** <u>**Exclusive Remedy**</u>. Other than claims for fraud, this Article VIII shall provide the sole and exclusive remedy for any misrepresentation or breach of warranty, covenant or other

*Execution Copy*

agreement or other claim arising out of this Agreement, the Ancillary Agreements, or the transactions contemplated hereby.

**8.10 Limitation On Damages.** NO PARTY WILL BE LIABLE FOR EXEMPLARY, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING LOST PROFITS AND LOST REVENUES, WHICH ARISE DIRECTLY OR INDIRECTLY OUT OF THE PURCHASE, SALE AND/OR USE OF THE PURCHASED ASSETS WHETHER SUCH DAMAGES ARE ASSERTED IN AN ACTION BROUGHT IN CONTRACT, IN TORT OR PURSUANT TO SOME OTHER THEORY AND WHETHER THE POSSIBILITY OF SUCH DAMAGES WAS MADE KNOWN OR WAS FORESEEABLE.

## ARTICLE IX

## COVENANTS OF SELLER PRIOR TO CLOSING

**9.01 Access and Investigation.** Between the date of this Agreement and the Closing Date, and upon reasonable advance notice received from Buyer, Seller shall (and the Selling Shareholders shall cause Seller to) (a) afford Buyer and its representatives Fifth Third Bank, NA and their representatives (collectively, "Buyer Group") full and free access, during regular business hours, to Seller's personnel, properties, contracts, books and records, and other documents and data, such rights of access to be exercised in a manner that does not unreasonably interfere with the Business; (b) furnish Buyer Group with copies of all such contracts, governmental authorizations, books and records, and other existing documents and data as Buyer may reasonably request; (c) furnish Buyer Group with such additional financial, operating, and other relevant data and information as Buyer may reasonably request; and (d) otherwise cooperate and assist, to the extent reasonably requested by Buyer, with Buyer's investigation of the properties, assets, and financial condition related to Seller.

**9.02 Operation of the Business by Seller.** Between the date of this Agreement and the Closing, Seller shall (and the Selling Shareholders shall cause Seller to):

(a) conduct its business only in the ordinary course of business and not enter into any agreements or commitments other than at substantially prevailing market prices and on substantially prevailing market terms;

(b) except as otherwise directed by Buyer in writing, and without making any commitment on Buyer's behalf, use commercially reasonable efforts to preserve intact its current business organization, keep available the services of its officers, employees, and agents and maintain its relations and good will with suppliers, customers, landlords, creditors, employees, agents, and others having business relationships with it;

(c) confer with Buyer prior to implementing operational decisions of a material nature;

(d) otherwise report to, and as reasonably requested by, Buyer concerning the status of the Business, including all financial matters;