**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| VALLEY FORCE INSURANCE COMPANY, | Case No.: 1:14-cv-792 |
| Plaintiffs, | Judge Michael R. Barrett |
| v. | |
| FISHER KLOSTERMAN, INC., | |
| Defendant. | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Valley Forge Insurance Company's ("Valley Forge") Motion to Dismiss Count VI (Bad Faith) of Defendant Fisher Klosterman Inc.'s ("FKI") Counterclaim.  (Doc. 55).  FKI has filed a response in opposition (Doc. 57), and Valley Forge has filed a reply (Doc. 58).

**I.     COUNTERCLAIM ALLEGATIONS**

FKI asserts counterclaims for (1) a declaratory judgment regarding the duty to defend; (2) a declaratory judgment regarding an implied-in-fact contract; (3) a declaratory judgment regarding unjust enrichment; (4) a declaratory judgment regarding quantum meruit; (5) a declaratory judgment regarding the duty to cooperate; and (6) bad faith.  (Doc. 54).  The focus of Valley Forge's motion is on FKI's counterclaim for bad faith.

FKI makes numerous allegations with respect to the underlying Valero suit, the insurance policies, the negotiations between the parties, and FKI's cooperation.  (Doc. 54, PageId 2149-70).  For the sake of brevity, those allegations are incorporated by reference here.  Relating to the bad faith counterclaim specifically, FKI states:

156. There is coverage for the Valero Suit under the Policies.

1

157. Valley Forge's August 30, 2013 letter states that Valley Forge "conclude[s] that FKI assumed responsibility for only one of the two possible contracts for products possibly at issue at the Paulsboro refinery. [Valley Forge] further conclude[s] that FKI did not assume the contracts for the products at issue in the Valero Suit at the Texas City and Houston refineries. As to the contract for products at issue at the St. Charles refinery, that contract was entered into after the APA and therefore, [Valley Forge] conclude[s] that FKI is responsible for the products which are the subject of the St. Charles contract."

158. Valley Forge's August 30, 2013 letter further states that Valley Forge "conclude[s] that BFK retained the liabilities for the products which are the subject of one contract at the Paulsboro refinery, the one contract at issue at the Texas City refinery, and both contracts at issue at the Houston refinery."

159. The aforementioned statements made by Valley Forge in its August 30, 2013 letter constitute party admissions.

160. The Valero Suit trial court's August 26, 2014 order denied FKI's summary judgment motion concerning economic loss with respect to the Paulsboro refinery.

161. Valley Forge was aware that there was a risk that the Valero Suit trial court's August 26, 2014 order granting FKI's summary judgment motion concerning successor liability for the Texas City and Paulsboro refineries would be reversed on appeal.

162. Valley Forge nonetheless improperly and unreasonably denied coverage for the settlement between FKI and Valero.

163. Instead, Valley Forge sued FKI for reimbursement of defense costs and now seeks to take advantage of its policyholder FKI by arguing that FKI should be bound by its arguments in the Valero Suit.

164. Valley Forge is using this strategy to attempt to force FKI to repay defense costs which Valley Forge had a duty to pay under the Policies.

165. FKI fully cooperated with Valley Forge in the defense of the Valero Suit and was successful with respect to the defense of the Valero Suit.

166. FKI commenced a lawsuit against BFK in order to preserve the statute of limitations with respect to potential claims against BFK for indemnity under the APA and tendered the prosecution of that lawsuit to Valley Forge.

167. Valley Forge has not responded to the tender of the suit against BFK[.]

2

168.    FKI also has offered to transfer to Valley Forge its rights to indemnification claims against Valtech to Valley Forge for costs incurred in the Valero Suit.

169.  Valley Forge has not responded to this offer.

170.  Valley Forge commenced litigation against FKI in order to force FKI to repay amounts that Valley Forge should attempt to recover from Valtech or BFK.

171.  Indeed, prior to the trial court's summary judgment decision in the Valero Suit, Valley Forge and FKI had tentatively agreed that they would pursue BFK and Valtech together.

172.  Valley Forge has made baseless allegations that FKI failed to cooperate as required by the Policies when Valley Forge is fully aware that FKI cooperated fully with Valley Forge in the defense of the Valero Suit.

173.  Valley Forge has purposefully failed to allege the existence of facts bearing on its claims, including that FKI explicitly rejected Valley Forge's purported reservation of the right to recoup defense costs in the event the Valero Suit was not covered by the policies.

174.  In its August 30, 2013 letter, Valley Forge stated that it concluded that FKI had responsibility for one of the two contracts at issue for the Paulsboro refinery.

175.  The statements made by Valley Forge in its August 30, 2013 letter constitute party admissions that Valley Forge believed that FKI was liable for one of the two contracts at issue in the Valero Suit for Valero's Paulsboro refinery as well as the contract for the St. Charles refinery.

176.  Accordingly, Valley Forge had, and conceded that it had, a duty to defend the Valero Suit.

177.  In commencing litigation against FKI, Valley Forge actually has the ulterior motive of forcing FKI to forego the coverage purchased under the Policies and forcing FKI to pay back defense costs via settlement.  This improper litigation strategy effectively eviscerates the coverage provided by the Policies, for which CECO has paid substantial premiums.

178.  In commencing litigation against FKI and seeking recoupment of the defense costs paid to defend FKI in the Valero Suit, Valley Forge has arbitrarily and capriciously denied FKI the benefits FKI contracted for under the Policies.

179.  Valley Forge's conduct is not reasonably justified.

3

180.  Moreover, in engaging in the aforementioned wrongful conduct, Valley Forge has acted in conscious disregard for the rights of FKI and has caused substantial harm to FKI.

181.  By reason of the foregoing, FKI is entitled to compensatory and punitive damages, in an amount to be determined at trial, attorneys' fees and costs, and pre- and post-judgment interest.

(Doc. 54, PageId 2170-74).

## II.  MOTION TO DISMISS STANDARD

When reviewing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotations omitted).  To properly state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"When a court is presented with a Rule 12(b)(6) motion, it may consider . . . exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein."  *Devlin v. Kalm*, 531 F. App'x 697, 703 (6th Cir. 2013) (quoting *Bassett*, 528 F.3d at 426).  However, "[w]hile documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must

4

also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Mediacom Southeast LLC v. BellSouth Telcoms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (internal citations, internal quotations, and internal alterations omitted).

## III.   ANALYSIS

An insurance company has a duty to its insured to act in good faith in the handling and payment of claims of the insured. *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 276 (1983). A lack of good faith in the handling and payment of claims by the insurance company could be a basis for a bad faith tort claim against it. *Id.* In a bad faith action, the insurer's liability is not dependent on a breach of the insurance contract. *Gerken v. State Auto Ins. Co.*, No. 13CA14, 2014-Ohio-4428, ¶ 46 (4th Dist. Sept. 8, 2014) (citing *Captain v. United Ohio Ins. Co.*, No. 09CA14, 2010-Ohio-2691, ¶ 22 (4th Dist. 2010)). "'Rather, the liability arises from the breach of the positive legal duty imposed by law due to the relationships of the parties.'" *Gerken*, 2014-Ohio-4428, ¶ 46 (citing *Hoskins*, 6 Ohio St. 3d at 276; *Captain*, 2010-Ohio-2691, ¶ 46).

An insurer is not exposed to a bad faith claim simply because it denied a claim for benefits, acted negligently, or made a bad judgment. *Hoskins*, 6 Ohio St. 3d at 276-77; *see also Rauh Rubber, Inc. v. Berkshire Life Ins. Co.*, No. 98-4122/98-4244, 1999 U.S. App. LEXIS 34043, at *6-7 (6th Cir. Dec. 16, 1999); *Schaller v. Nat'l Alliance Ins. Co.*, 496 F. Supp. 2d 890, 899-900 (S.D. Ohio 2007). Rather, the Ohio Supreme Court uses the "reasonable justification" standard in bad faith cases, regardless of whether the allegations are predicated on the insurer's refusal to pay a claim, refusal to defend its insured against a third-party claim, or other action or inaction in handling the claim. *Gerken*, 2014-Ohio-4428, ¶ 47 (citing *Captain*, 2010-Ohio-2691, ¶ 29); *see also Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 554, paragraph one of the syllabus (1994). An insurer lacks reasonable justification only when it acts in an arbitrary and capricious

manner. *Gerken*, 2014-Ohio-4428, ¶ 48 (citing *Captain*, 2010-Ohio-2691, ¶ 30; *Hoskins*, 6 Ohio St. 3d at 277); *see also Zoppo*, 71 Ohio St. 3d at 554. "Arbitrary" means "involving a determination made without consideration of or regard for the facts, circumstances, fixed rules, or procedures[.]" Black's Law Dictionary (10th ed. 2014). "Capricious" means "characterized by or guided by unpredictable or impulsive behavior; likely to change one's mind suddenly or behave in unexpected ways" or "contrary to evidence or established rules of law." Black's Law Dictionary (10th ed. 2014).

The parties' briefings on the motion to dismiss raise multiple issues, which are addressed below.

### A. <u>Valley Forge's Liability for "Denial" of Coverage for Settlement with Valero</u>

Valley Forge argues that FKI's allegations fail to demonstrate that Valley Forge outright denied coverage to FKI for the settlement between FKI and Valero. It contends that the allegations instead show that Valley Forge asked the Court to declare the parties' respective rights as to the duty to indemnify. It further points out that FKI had no legal obligation to pay Valero damages because the Texas court granted FKI summary judgment as to the three refineries remaining at issue.

FKI responds that its "bad faith claim is not based on Valley Forge's refusal to indemnify FKI and FKI has chosen not to seek recovery from Valley Forge for the settlement with Valero." (Doc. 57, PageId 2414). It states that it therefore need not allege that Valley Forge denied its claim in order to survive a motion to dismiss.

Valley Forge replies that FKI incorrectly represents that its bad faith claim is not based on Valley Forge's refusal to indemnify FKI for the Valero settlement amount, pointing to the allegation at paragraph 162 of the counterclaim.

6

The Court agrees with Valley Forge that FKI's bad faith claim as set forth in the counterclaim appears to be based, at least in part, on Valley Forge's denial of indemnification for the settlement between FKI and Valero.  FKI's retreat from that position in its briefing is noted, but the Court nonetheless will proceed to address the issue as alleged in the counterclaim.

Based upon the allegations set forth in the counterclaim, the Court finds that the facts alleged do no plausibly show that Valley Forge acted without reasonable justification to the extent it can be said that it denied indemnification for the settlement between FKI and Valero.  A denial of coverage alone is insufficient to support a claim for bad faith.  *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 276-77 (1983); *see also Rauh Rubber, Inc. v. Berkshire Life Ins. Co.*, No. 98-4122/98-4244, 1999 U.S. App. LEXIS 34043, at *6-7 (6th Cir. Dec. 16, 1999); *Schaller v. Nat'l Alliance Ins. Co.*, 496 F. Supp. 2d 890, 899-900 (S.D. Ohio 2007).  None of the allegations plausibly show Valley Forge had no reasonable justification for any such denial of indemnification.  Indeed, FKI's allegations indicate that all claims in the Valero suit against FKI were dismissed, either by Valero or through the judgments of the Texas court.  (Doc. 54, PageId 2152-54).  In other words, FKI had no actual legal obligation to pay Valero any sum of money based upon a liability determination at the time it entered into the settlement.  Given that the Texas case concluded as to FKI without any finding that FKI was liable to Valero, Valley Forge would have had a reasonable justification for its position that it had no duty to indemnify FKI, even if that position ultimately was found to be incorrect.  Nothing presented by FKI would demonstrate that Valley Forge's position in that regard was clearly unsupported by either the facts or the law.

Accordingly, the bad faith claim is dismissed to the extent it is based upon Valley Forge's bad faith denial of indemnification for the settlement between FKI and Valero.[1]

### B.  Bad Faith in Filing a Declaratory Judgment Action Against FKI

The filing of a declaratory judgment action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to determine the parties' respective rights and obligations under an insurance policy is permissible and is a procedure that insurers are encouraged to pursue to resolve disputed coverage issues.  *See Western World Ins. Co. v. Hoey*, 773 F.3d 755, 761-63 (6th Cir. 2014); *Assurance Co. of Am. v. Cont'l Dev. & Constr., Inc.*, 392 F. App'x 472, 475 (6th Cir. 2010).  To satisfy its burden at this stage with respect to its bad faith claim, FKI must have alleged facts that plausibly show that Valley Forge could not have reasonably believed that a controversy exists to support the claims asserted in this case.  *See Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 554 (1994); *see also Arrowhead Indem. Co. v. Lubrizol Corp.*, No. 1:10-cv-2871, 2011 U.S. Dist. LEXIS 88480, at *12-13 (N.D. Ohio Aug. 10, 2011) ("To show that [the filing of a declaratory judgment action] was not reasonably justified, [the insured] must allege facts to show that [the insurer] could not have reasonably believed that a controversy exists to support this lawsuit.").

#### 1.  Duty to Indemnify

Valley Forge argues that the pleadings do not plausibly show that it lacked a reasonable belief as to the existence of a controversy as to the duty to indemnify.  It argues that the

---

[1] To the extent that Valley Forge argues, however, that an actual denial of coverage (i.e., breach of contract) is necessary to proceed on a bad faith claim, the Court disagrees.  As stated *supra*, a bad faith claim is not dependent on a breach of the insurance contract.  *Gerken v. State Auto Ins. Co.*, No. 13CA14, 2014-Ohio-4428, ¶ 46 (4th Dist. Sept. 8, 2014) (citing *Captain v. United Ohio Ins. Co.*, No. 09CA14, 2010-Ohio-2691, ¶ 22 (4th Dist. 2010)); *see also Brit Ins. Holdings N.V. v. Krantz*, Case No. 1:11-cv-948, 2012 U.S. Dist. LEXIS 1398, at *16-17 (N.D. Ohio Jan. 5, 2012).  "'Rather, the liability arises from the breach of the positive legal duty imposed by law due to the relationships of the parties.'"  *Gerken*, 2014-Ohio-4428, ¶ 46 (citing *Hoskins*, 6 Ohio St. 3d at 276; *Captain*, 2010-Ohio-2691, ¶ 46).

allegation that there is coverage for the Valero suit under the policies is a bald legal conclusion that should not be given any weight.  As to specific facts alleged in the counterclaim, Valley Forge contends that FKI's reliance on Valley Forge's August 30, 2013 letter, the Texas court's denial of FKI's summary judgment motion on the economic loss rule for the Paulsboro refinery, and the risk that the Texas court's August 26, 2014 order granting FKI summary judgment could have been reversed on appeal still fails to support a plausible bad faith tort claim based on Valley Forge seeking a declaratory judgment on this issue.  It asserts that none of the facts plausibly demonstrate that any amount of the Valero settlement actually is covered under the Valley Forge policies.  It further points out that FKI has not sought declaratory relief in its counterclaim as to the duty to indemnify and that in response to Valley Forge's motion for summary judgment asking the Court to declare that it owes no duty to indemnify, FKI failed to set forth any facts to counter Valley Forge's argument, claiming only that the judgment on that issue was premature.

In its response, FKI does not directly address the issue of whether Valley Forge had a reasonable belief that a controversy existed as to the duty to indemnify, but it does make statements in various portions of its briefing that touch upon the issue.  Specifically, FKI states that its "bad faith claim is not based on Valley Forge's refusal to indemnify FKI and FKI has chosen not to seek recovery from Valley Forge for the settlement with Valero."  (Doc. 57, PageId 2414).  It further states that "FKI's bad faith claim is not predicated on whether [Valley Forge] was actually liable for damages alleged in the Valero Suit in this litigation."  (Doc. 57, PageId 2415).  It argues that it therefore need not demonstrate that Valley Forge actually denied its claim in order to survive a motion to dismiss.

Valley Forge replies that FKI incorrectly states that its bad faith claim was not based on Valley Forge's refusal to indemnify FKI for the Valero settlement amount, pointing to

allegations in paragraph 162 of the counterclaim.  Valley Forge contends that its failure to defend these allegations of bad faith underscores the lack of merit of FKI's entire bad faith claim.

The Court agrees with Valley Forge that FKI's bad faith claim as set forth in the counterclaim appears to be based, in part, on Valley Forge seeking a declaratory judgment on the duty to indemnify.  FKI's apparent retreat from that position in its briefing again is noted, but the Court nonetheless will proceed to address the issue as alleged in the counterclaim.

Based upon the allegations set forth in the counterclaim, the Court finds that the facts alleged do no plausibly show that Valley Forge had no reasonable belief that a controversy existed as to the duty to indemnify.  This issue is intertwined with the above discussion as to whether Valley Forge's purported denial of the claim could plausibly support a bad faith cause of action.  As explained *supra*, that purported denial of the claim is insufficient and the allegations in the counterclaim do not plausibly demonstrate that Valley Forge would not have had a reasonable justification for any such denial.  With respect to filing this declaratory judgment action, the same facts supporting its purported denial of indemnification would provide it with a reasonable justification for its position in the declaratory judgment action that Valley Forge had no duty to indemnify FKI for the settlement with Valero.

As for whether Valley Forge nonetheless still could not have reasonably believed a controversy existed on that issue at the time it filed the declaratory judgment action, FKI's allegations do not indicate that FKI conceded that Valley Forge had no duty to indemnify it for the settlement prior to Valley Forge filing the declaratory judgment action.  To the contrary, the allegations indicate that FKI continued to contest Valley Forge's position that it owed FKI no duty to indemnify it for the settlement. Indeed, FKI specifically alleges in its counterclaim that "Valley Forge nonetheless improperly and unreasonably denied coverage for the settlement

10

between FKI and Valero[,]" and it refers to the possibility of appeal of the judgments of the Texas court (Doc. 54, PageId 2172).[2]  Based on those allegations, the only reasonable inference is that Valley Forge had a reason to believe that a controversy existed between FKI and Valley Forge as to whether a duty to indemnify existed so as to justify filing this lawsuit to obtain a declaratory judgment on that issue.   Although FKI now appears to be conceding that it is not seeking indemnification for the settlement with Valero, that concession comes well after the filing of the declaratory judgment action by Valley Forge and cannot be the basis for a bad faith claim against Valley Forge based upon the filing of this declaratory judgment action.[3]

Accordingly, the bad faith claim shall be dismissed as to Valley Forge's filing of the declaratory judgment as to the duty to indemnify.[4]

### 2.  Duty to Defend/Duty to Cooperate

Valley Forge argues that the allegations in the counterclaim do not plausibly demonstrate that Valley Forge lacked a reasonable belief that a controversy existed as to the duty to defend and the duty to cooperate.  Valley Forge points out that FKI never moved to dismiss those claims as frivolous or otherwise argued that the claims lacked any legal or factual basis.  Valley Forge states that FKI alleges in its counterclaims seeking a declaratory judgment on the duty to defend

---

[2] Although FKI did not itself seek a declaratory judgment on the duty to indemnify in this lawsuit, it does not alter the fact that there is no indication that the controversy over the duty to indemnify was terminated prior to Valley Forge filing the present action.  The allegations in the counterclaim as well as FKI's response to Valley Forge's motion for summary judgment that Valley Forge had no duty to indemnify FKI for the settlement in which is argued only that the motion was premature also suggest that it still remains at least ambiguous as to whether FKI contests Valley Forge's duty to indemnify FKI in regards to the Valero suit.

[3] Moreover, the apparent concession that it is not seeking indemnification for the settlement from Valley Forge does not necessarily equate to a concession that Valley Forge has no duty to indemnify FKI for the settlement.  The Court finds that it would be reasonable, given the circumstances presented in this case and the contentious history of the parties, for Valley Forge to continue to pursue the declaratory judgment as to the duty to indemnify.

[4] Although Valley Forge had a reasonable justification for filing the lawsuit to seek a declaratory judgment as to the duty to indemnify, it does not necessarily follow that a bad faith claim cannot be maintained against Valley Forge for any other claim on which it seeks declaratory relief.  Indeed, the parties have not briefed this issue in any meaningful way, and thus, the Court need not address the issue of whether a reasonable justification for one claim in a lawsuit, but not all claims in the lawsuit, precludes a bad faith claim against the insurer.

and duty to cooperate that a real and present controversy exists between FKI and Valley Forge regarding their respective rights and obligations under the insurance policies as it relates to the Valero suit. Turning to the August 30, 2013 letter, Valley Forge argues that FKI did not advance an argument as to a party admission in response to Valley Forge's motion for summary judgment or its cross-motion for summary judgment on the duty to defend and that the "true facts" establish that the products that were the subject of the contracts in the August 30, 2013 letter were not at issue in the Valero suit. As to the duty to cooperate, Valley Forge argues that FKI's allegations do not plausibly show a lack of controversy. Valley Forge contends that the lawsuit against BFK that is referenced by FKI was commenced after the filing of the declaratory judgment action and does not demonstrate Valley Forge lacked a reasonable belief as to a controversy on the issue of cooperation at the time the present declaratory judgment action was filed.

FKI responds that the allegations plausibly show that Valley Forge lacked reasonable grounds for believing that it had no duty to defend and that FKI failed to cooperate. FKI relies first upon the allegations as to the August 30, 2013 letter sent on behalf of Valley Forge indicating that FKI retained liability for the products that were the subject of the St. Charles contract and for one of two possible New Paulsboro contracts for products possibly at issue at that refinery. FKI contends that the allegations as to the letter and as to the letter constituting a party admission by Valley Forge indicate that Valley Forge itself believed that the claims asserted in the Valero suit potentially were covered by the policies. As to the duty to cooperate, FKI points to Valley Forge's purported admission that FKI effectively won the Valero suit such that Valley Forge could not demonstrate that it was prejudiced or materially injured or impaired because of any lack of cooperation. It further states that it alleged that it fully cooperated with

Valley Forge with respect to the Valero suit. It argues that those allegations plausibly show that Valley Forge acted without reasonable justification by making unsupported allegations concerning a purported failure to cooperate on the part of FKI.

Valley Forge replies that the filing of the lawsuit seeking a declaratory judgment as to the duty to defend did not plausibly constitute bad faith. First, it reiterates that the August 30, 2013 letter did not constitute an admission as to a duty to defend because it did not indicate that the contracts for which FKI may have assumed responsibility actually were at issue and the actual facts establish that the contract was never at issue. Second, Valley Forge argues that FKI has failed to plausibly show bad faith based on its claim for failure to cooperate, pointing again to the BFK lawsuit filed by FKI. Valley Forge argues that in that lawsuit, BFK asserted the affirmative defense of failure to timely comply with the notice requirements set forth in the Asset Purchase Agreement which, if successful, could bar FKI's indemnity claims against BFK and, thus, also destroy Valley Forge's potential subrogation rights against BFK.

As an initial matter, the Court disagrees with Valley Forge that FKI's actions or inactions in this litigation relating to the filing of motions, seeking alternative relief in the form of a declaratory judgment, or asserting certain arguments in lieu of others in summary judgment briefing preclude it from asserting its bad faith claim against Valley Forge relating to the duty to defend and duty to cooperate. Although the Court agrees that there were procedural avenues that could have been pursued at the outset of this litigation – including a motion to dismiss and a motion for judgment on the pleadings – on these claims if it believed they were entirely baseless, its failure to do so does not preclude FKI from pursuing the claim.[5]

---

[5] If FKI had filed such motions at the outset, the Court also could have imposed certain sanctions, if appropriate, upon a finding that the claim lacked a reasonable basis in fact or law. But, the Court recognizes that there are a number of facts that may be necessary for a determination that the claims were baseless that could not necessarily be fully addressed in a motion to dismiss or a motion for judgment on the pleadings.

With respect to Valley Forge seeking a declaratory judgment on the duty to defend, the Court finds that FKI has alleged facts that plausibly could support a finding of bad faith.  The August 30, 2014 letter relied upon by FKI, although not dispositive in and of itself, may indicate that Valley Forge knew that FKI contracts for the St. Charles and New Paulsboro refineries arguably were at issue in the lawsuit.  In addition, FKI alleges that the determinations as to what type of damages were at issue in the lawsuit were not made until the Texas courts' rulings on the summary judgment motions, at which point the Texas court denied summary judgment as to the New Paulsboro refinery based on the economic loss rule.  Construing those allegations in the light most favorable to FKI, it is plausible that Valley Forge knew that the claims asserted in the Valero suit arguably fell within coverage and required it to defend to the Valero suit pursuant to well-settled Ohio law.  *City of Sharonville v. Am. Emplrs. Ins. Co.*, 109 Ohio St. 3d 186, 189 (2006) (explaining when and how the duty to defend arises under Ohio law); *see also Cincinnati Ins. Cos. v. Motorists Mut. Ins. Co.*, No. 13CV0016-M, 2014 Ohio 3864, ¶ 10 (9th Dist. Sept. 8, 2014) (same at *City of Sharonville*).

The analysis of the claim as to the duty to defend also is necessarily intertwined with the Valley Forge's request for a declaratory judgment on the duty to cooperate, as the failure of an insured to cooperate as required under the policy may relieve an insurer of certain of its obligations under the policies.  *See Weller v. Erie Ins. Co.*, 125 Ohio App. 3d 270, 274-76 (2d Dist. 1998).  As such, a determination as to whether FKI has plausibly alleged no reasonable belief as to the existence of a controversy supporting a claim for declaratory judgment on the duty to defend also requires consideration of whether FKI has plausibly alleged no reasonable belief as to the existence of a controversy supporting a claim for declaratory judgment on duty to cooperate.  FKI has alleged that it "fully cooperated with Valley Forge in the defense of the

14

Valero Suit" and that "Valley Forge is fully aware that FKI cooperated fully with Valley Forge in the defense of the Valero suit."  (Doc. 54, PageId 2172-73).[6]  In further support, FKI's fact section provides specific allegations as to its cooperation with Valley Forge.  (Doc. 54, PageId 2158-61).  It also has alleged it "was successful with respect to the defense of the Valero suit," that it has transferred its right to indemnification claims against Valtech to Valley Forge, and that it has tendered the prosecution of the lawsuit against BFK to Valley Forge.  (Doc. 54, PageId 2172-73).  Although the Court recognizes that the BFK lawsuit was filed after this declaratory judgment action was filed by FKI and that one of the defenses raised by BFK in that lawsuit is FKI's failure to comply with notice requirements (Docs. 56-7, 56-8) such that it alone does not demonstrate a lack of controversy prior to the filing of the lawsuit,[7] the allegations as a whole, construed in the light most favorable to FKI, make it at least plausible at this stage that FKI cooperated as required by the policy, that Valley Forge was aware of the cooperation prior to filing the declaratory judgment action, and/or that Valley Forge was aware prior to the filing of the declaratory judgment action that any lack of cooperation was not material and substantial or did not prejudice its rights.  *See Weller*, 125 Ohio App. 3d at 274-76.

Accordingly, the bad faith claim as to Valley Forge's filing of the declaratory judgment as to the duty to defend and the duty to cooperate shall not be dismissed at this time.

### 3.  Defense Cost Reimbursement Based on Implied-in-Fact Contract

---

[6] Although these allegations may be considered legal conclusions couched as a factual allegation that need not be accepted as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 55 (2007), they are not wholly without factual support and therefore are given consideration in understanding the allegations as a whole with respect to Valley Forge's purported bad faith in filing the declaratory judgment action on the duty to cooperate.

[7] This is a publicly filed lawsuit, that is incorporated into the counterclaim by reference, and is central to the counterclaim.  Accordingly, it may properly be considered here without converting the motion to dismiss into a motion for summary judgment.  *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 927 (6th Cir. 2013); *Devlin v. Kalm*, 531 F. App'x 697, 703 (6th Cir. 2013); *Arrowood Indem. Co. v. Lubrizol Corp.*, No. 1:10-cv-2871, 2011 U.S. Dist. LEXIS 88480, at *10 (N.D. Ohio Aug. 10, 2011).

Valley Forge argues that the allegations in the counterclaim do not plausibly demonstrate that Valley Forge lacked a reasonable belief that a controversy existed as to the implied-in-fact contract claim. It points to *United National Insurance Co. v. SST Fitness Corp.*, 309 F.3d 914 (6th Cir. 2002), to argue that recovery of defense costs under an implied-in-fact contract theory is appropriate in this circuit and under Ohio law.

FKI responds that it has alleged that Valley Forge failed to consider evidence that is dispositive of its implied-in-fact contract claim prior to filing its Complaint and summary judgment briefing. FKI points to its April 13, 2013 letter in which it rejects Valley Forge's reservation of the right to recoup defense costs. It contends that the letter of which Valley Forge was aware conclusively shows that there was no meeting of the minds as required by Ohio law such that Valley Forge knew when it filed the action that *SST Fitness* was inapplicable. It rejects Valley Forge's argument that Valley Forge was not required to point out the April 2013 letter because it was written by FKI's own counsel, indicating that the primary issue is that Valley Forge ignored this dispositive evidence in asserting its claim and in moving for summary judgment.

Valley Forge replies that FKI's argument is an attempt to re-write its counterclaim by alleging that Valley Forge failed to consider facts that were dispositive of its implied-in-fact contract claim. It nonetheless contends that, in either case, the allegations are insufficient to survive a motion to dismiss. It points to its summary judgment motion and how it has established the applicability of *SST Fitness* to the instant case. It claims that FKI's letter objecting to Valley Forge's reservation of rights is irrelevant to the requirements in *SST Fitness* because Valley Forge continued thereafter to reserve its right to recoup defense costs while FKI accepted the defense actually offered.

16

To the extent that FKI bases its argument on the conduct of Valley Forge in this litigation, that issue is addressed below with respect to post-filing conduct. This section addresses only whether the filing of the request for a declaratory judgment on the implied-in-fact contract issue plausibly constituted bad faith.

The determination as to whether Valley Forge reasonably believed in the existence of a controversy as to the implied-in-fact contract theory under *SST Fitness* is necessarily tied to the determination of its reasonable belief in the existence of a controversy as to the duty to defend and duty to cooperate on which the Court has held a bad faith claim has plausibly been alleged. In other words, if Valley Forge sought the declaratory judgment on the duty to defend and the duty to cooperate without a reasonable belief that a controversy existed, then it likewise could have sought the reimbursement of defense costs pursuant to *SST Fitness* without a reasonable belief that a controversy existed. Therefore, the Court finds that FKI has plausibly alleged a bad faith claim stemming from the filing of the implied-in-fact contract claim at this early stage of the litigation, and to find otherwise at this time would be premature.

Nonetheless, if a finding was made that Valley Forge had a reasonable belief in the existence of a controversy at the time it filed the declaratory judgment action on the duty to defend and the duty to cooperate, the Court concludes that FKI would not have stated a plausible claim for bad faith based on Valley Forge's implied-in-fact contract claim. Despite Valley Forge's contention, its April 13, 2013 letter in which it rejects Valley Forge's reservation of the right to recoup defense costs is not dispositive of the implied-in-fact contract claim and does not demonstrate that *SST Fitness* is plainly inapplicable. *SST Fitness* permits an implied-in-fact contract claim to be asserted where it is justifiable, and a determination as to the existence of a meeting of the minds requires consideration of all of the surrounding circumstances, *Legros v.*

*Tarr*, 44 Ohio St. 3d 1, 6 (1989).  As demonstrated by FKI's own factual allegations (Doc. 54, PageId 2156-57), FKI accepted the defense from Valley Forge even after the rejection letter and generally controlled the defense in the Valero suit thereafter.  As such, the entirety of the surrounding circumstances must be evaluated to determine the existence of an implied-in-fact contract, and FKI's letter is merely one of the circumstances to be considered.  The Court therefore cannot conclude that FKI has plausibly stated a bad faith claim against Valley Forge based on it the implied-in-fact contract claim to the extent Valley Forge would be found to have had a reasonable belief in the existence of a controversy as to the duty to defend and duty to cooperate.

Accordingly, the bad faith claim concerning Valley Forge's filing of the declaratory judgment as to the implied-in-fact contract shall not be dismissed at this time but shall be limited to the theory that Valley Forge had no reasonable belief in the existence of a controversy as to the duty to defend and therefore likewise lacked a reasonable belief as to the existence of a controversy as to the implied-in-fact contract claim for reimbursement of defense costs.

### C. Valley Forge's Liability for Bad Faith Based on Conduct in Current Litigation

Valley Forge argues that FKI's bad faith claim, to the extent it is based on Valley Forge's litigation conduct after the filing of this declaratory judgment action, cannot form the basis of a bad faith claim.  It argues that courts generally prohibit the post-filing litigation conduct from forming the basis of a bad faith claim on two public policy grounds:  (1) the introduction of such evidence hinders the right to defend and impairs access to the courts; and (2) permitting such evidence is unnecessary because the trial court can assure that insurers do not act improperly or abuse litigation tactics.  It points out that FKI has not sought protection from this Court for Valley Forge's litigation strategy or other litigation tactics because it has not acted improperly.

18

Valley Forge states that its estoppel argument was proper and that its failure to cite facts it deems irrelevant to the issues does not support a claim that Valley Forge purposefully concealed those facts.

FKI contends that its bad faith claims may be based on conduct occurring during in this lawsuit. While not specifically addressing the conduct in this lawsuit upon which its claims are based, there are references in its motions to Valley Forge's decision to file certain motions and to leave certain facts out of pleadings and motions that FKI believes are critical to the case. FKI also argues that the Court can and should consider allegations as to Valley Forge's alleged refusal to acknowledge its tender of claims against BFK and Valtech.

Valley Forge replies that its failure to include certain facts in its pleadings in this case or other post-filing conduct in this case cannot support a bad faith claim against it. It claims that the cases relied upon by FKI for its argument are distinguishable in that they involve first-party insurance claims, rather than third-party insurance claims. It points out that the third-party claim in this case was fully resolved prior to the filing of this lawsuit such that it does not fall within any exception. Valley Forge further contends that FKI's allegations as to its conduct in this lawsuit fail to demonstrate bad faith. As for the allegations as to Valley Forge's alleged refusal to acknowledge the tender of claims against BFK and Valtech, Valley Forge argues that the Court should not consider them because they are settlement communications not properly admitted in this Court and that the allegations fail to show that it acted arbitrarily, capriciously, or without reasonable justification.

Ohio courts have suggested that the duty of good faith of the insurer does not necessarily end at the time a lawsuit is initiated between the insurer and insured, even if that lawsuit is a declaratory judgment action. *See Westfield Cos. v. O.K.L. Can Line*, 155 Ohio App. 3d 747,

759-62 (1st Dist. 2003); *see also Spadafore v. Blue Shield, Ohio Medical Indem. Corp.*, 21 Ohio App. 3d 201, 204 (10th Dist. 1985).[8] That means that the insurer still retains a duty to act in good faith towards the insured in the handling of its claim, even though they now are adversaries in the litigation process. *See Spadafore*, 21 Ohio App. 3d at 204. But in the course of litigating the declaratory judgment, many actions of the insurer relating to litigation tactics and strategy can be handled—and are most appropriately handled—by the Court, utilizing the applicable rules of civil procedure. *See Helms v. Nationwide Ins. Co.* 280 F.R.D. 354, 361-62 (S.D. Ohio 2012); *Knotts v. Zurich Ins. Co.*, 197 S.W. 3d 512, 518-23 (Ky. 2006) (surveying caselaw precluding bad faith claim based on post-filing conduct). This is so for a multitude of reasons. The rules of civil procedure are intended to allow the parties to litigate within permissible boundaries but to also allow a court to prevent and remedy abusive and inappropriate litigation as soon as it arises. It would be easy to allow an insured to characterize every aggressive litigation tactic or strategy of an insurer as bad faith in the context of a declaratory judgment action, even if the litigation tactic or strategy was within the permissible boundaries of the rules of civil procedure. Allowing a characterization of permissible litigation tactics as bad faith would undermine the purposes and goals of the rules of civil procedure and inhibit insurers from aggressively and properly litigating coverage disputes to the full extent permitted of other parties. Further, as a practical matter, allowing the insurer to continuously add new allegations to the complaint throughout the course of litigation based on the ongoing litigation tactics of the insured would be unmanageable. Rather, the more efficient method of handling those disputes is through the rules of civil procedure, and in particular, Federal Rules of Civil Procedure 11 and 37. As such, the Court agrees with Valley Forge that the allegations or arguments of FKI as to bad faith based upon

---

[8] Neither party has cited a case conclusively showing that such a duty of good faith terminates upon the filing of a declaratory judgment action by an insurer.

Valley Forge's actions in regards to its pleadings and motions for summary judgment in this declaratory judgment action fail to state a plausible claim for bad faith against Valley Forge.[9]

That is not to say, however, that other post-filing conduct of Valley Forge outside the particular litigation tactics and strategies in this Court cannot be relevant to proving FKI's bad faith claim. Indeed, some Ohio courts have permitted conduct directly related to the handling of the claim (as distinguished from the litigation conduct itself) to be admissible as evidence of bad faith. *Schultz v. Lincoln Nat'l Life Ins. Co.*, No. 69499, 1996 Ohio App. LEXIS 5777 (8th Dist. Dec. 19, 1996); *Spadafore*, 21 Ohio App. 3d at 204.[10] For example, FKI alleges that Valley Forge has not responded to FKI's tender of a separate suit against BFK or it tender of its rights of indemnification against Valtech. While the relevance of the allegations to the claim for bad faith against Valley Forge based upon the handling of its claims under the contract are at this time unclear or, at least, in dispute, the Court finds it plausible that such allegations could be relevant to or somehow support FKI's claim for bad faith.[11] Further development of the factual record and additional briefing on the issue is necessary to fully determine the relevance and implications of those allegations.[12]

---

[9] To the extent FKI is seeking attorneys' fees for having to defend itself in this purportedly baseless declaratory judgment action, there are multiple avenues by which such fees potentially may be recovered, including its pending bad faith claim, the rules of civil procedure, or under other exceptions set forth in Ohio caselaw.

[10] Although these cases are distinguishable from the present case in that they relate to the handling of first-party insurance claims, there is nothing that specifically precludes application to circumstances such as this one where the insured and insurer are direct adversaries and the contractual relationship continues to exist despite the conclusion of the underlying litigation.

[11] Although Valley Forge urges the Court to consider certain documents that it believes plainly show that it had a reasonable justification for its actions, the Court finds that it is premature to determine the relevance of those documents within the scope of the case and prior to more complete discovery on the issues presented.

[12] The Court also is not persuaded at this time that the allegations constitute inadmissible settlement discussions, as Fed. R. Evid. 408 permits admission of settlement communications for various purposes and some courts have permitted admission of such communications to prove bad faith. *See Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 522-23 (Ky. 2006); *see also Athey v. Farmers Ins. Exch.*, 234 F.3d 357 (8th Cir. 2000) (cited with approval in Notes of Advisory Committee on 2006 Amendments to Fed. R. Evid. 408). Valley Forge has not demonstrated that settlement communications offered to prove bad faith are conclusively outside the scope of

**D.** <u>**Sufficiency of Allegations of Compensatory and Punitive Damages Relating to Bad Faith Claim**</u>

Valley Forge contends that FKI has failed to allege any compensatory damages as required by Ohio law, and that attorneys' fees incurred in prosecuting bad faith tort claims are not considered compensatory damages. It further argues that without any allegation as to recoverable compensatory damages, FKI's request for punitive damages and attorneys' fees in connection with the bad faith claim must also be dismissed. Additionally, Valley Forge takes the position that FKI has failed to plead facts to establish the requisite mental state of Valley Forge for the award of punitive damages, as its allegations do not demonstrate actual malice.

FKI responds that its allegations are sufficient to withstand Valley Forge's motion to dismiss. It points out that it has alleged that Valley Forge has acted in conscious disregard of FKI's rights, consistent with the standard of actual malice required to prove bad faith. It further states that it has alleged damages incurred as a result of Valley Forge's conduct. It also argues that attorneys' fees are properly considered as a measure of compensatory damages even in the absence of a punitive damage award.

Valley Forge argues that FKI does not dispute that attorneys' fees and costs in responding to the declaratory judgment action are not considered compensatory damages for bad faith. It further contends that FKI's request for punitive damages requires some support from compensatory damages (other than attorneys' fees) and that attorneys' fees can only be awarded in the case if they are part of the punitive damages award.

As an initial matter, the Court must consider Federal Rule of Civil Procedure 9. Under Rule 9, only special damages must be specifically pled. Valley Forge has not demonstrated that FKI's pleading of "compensatory damages" without more is insufficient under Federal Rule of

---

admissibility. As such, the Court construes the allegations and the purpose of the allegations in the light most favorable to FKI. This issue may be revisited at a later time during this litigation.

Civil Procedure 9 to allow recovery of compensatory damages not specifically pled (i.e., compensatory damages other than any attorneys' fees purportedly being sought). As required by Federal Rule of Civil Procedure 8, the allegation for compensatory damages places Valley Forge on notice that such damages are being requested by FKI. No case cited by Valley Forge requires more detailed pleadings to allow the recovery of general compensatory damages. Here, FKI has pled sufficient facts, as explained above, to support a cause of action for bad faith from which compensatory damages would naturally flow, and has alleged it is seeking compensatory damages as part of its recovery. Its failure to specify each and every form of compensatory damages it is seeking in the complaint does not preclude FKI from recovery of such damages. As such, the Court finds that the allegation that FKI is seeking recovery of compensatory damages is sufficient at this stage of the litigation to state a claim for compensatory damages independent of any attorneys' fees.

To the extent that FKI seeks attorneys' fees as part of the compensatory damages sought for its bad faith claim, there is no question that such damages are compensatory in nature under Ohio law. *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 558 (1994) ("Attorney fees may be awarded as an element of *compensatory damages*") (emphasis added); *TOL Aviation, Inc. v. Intercargo Ins. Co.*, Nos. L-05-1308/L-06-1050 2006-Ohio-6061, ¶ 74 (6th Dist. 2006) (noting that an insurer may recover attorney fees as compensatory damages); *Furr v. State Farm Mut. Auto. Ins. Co.*, 128 Ohio App. 3d 607, 627 (6th Dist. 1998) ("Initially, we note that an insurer who acts in bad faith is liable for those compensatory damages, including attorney fees, flowing from the bad faith conduct of the insurer and caused by the insurer's breach of contract."); *Scheetz v. Aho*, No. 1997CA00335, 1998 Ohio App. LEXIS 2498, at *8 (5th Dist. May 18, 1998) ("When there is a finding of bad faith, attorney fees may be included in considering

23

compensatory damages."); *Brown v. Guar. Title & Trust/ARTA*, No. 94-41, 1996 Ohio App. LEXIS 3812, at *12 (5th Dist. May 28, 1996) (finding that an insured may recover attorney fees as compensatory damages when it prevails on a bad faith claim).  As for whether the compensatory damages of attorneys' fees may be awarded without an award of punitive damages, there is some authority supporting both FKI's and Valley Forge's position. *Compare Zoppo*, 71 Ohio St. 3d at 558 ("Attorney fees may be awarded as an element of compensatory damages *where the jury finds that punitive damages are warranted*"); *Lowery v. Rizer*, No. 96CA11, 1996 Ohio App. LEXIS 5111, at *6 (4th Dist. Nov. 12, 1996) ("A tort defendant is liable for the plaintiff's attorney fees only if the jury finds the defendant acted with malice in the commission of the tort and awards the plaintiff punitive damages") (citing *Zoppo*, 71 Ohio St. 3d at 558; *Digital & Analog Design Corp. v. North Supply Co.*, 63 Ohio St. 3d 657, 662 (1992); *Tulloh v. Goodyear Atomic Corp.*, 93 Ohio App. 3d 740, 756 (1994)), *with Brown*, 1996 Ohio App. LEXIS 3812, at *12 ("[W]e find an insured bringing a bad faith action may recover attorney fees as compensatory damages even if said insured has not demonstrated the existence of actual damages separate and distinct from said attorney's fees . . . .");[13] *TOL Aviation, Inc.*, 2006 Ohio 6061, ¶ 74 ("Ohio courts generally refuse to allow a prevailing party to recover attorney fees absent a statute providing for such an award.  However, an exception to the rule can arise if a party, particularly an insurance company, has acted in bad faith.  The underlying rationale is that such fees are an economic loss-damages-which flow from and are proximately caused by the insurer's bad faith.  Consequently, . . . an insured bringing a bad faith action may recover attorney fees as *compensatory damages* even if said insured has not demonstrated the existence of actual [or punitive] damages separate and distinct from said attorney's fees.")

---

[13] One case relied upon by the *Brown* court, *Motorists Mutual Insurance Co. v. Brandenburg*, 72 Ohio St. 3d 157 (1995), has been superseded by statute.

(internal citations and quotations omitted). The Court, however, need not decide here whether the attorneys' fees are recoverable in the absence of punitive damages because FKI has sufficiently pled a request for punitive damages.

In Ohio, punitive damages are recoverable against an insurer that breaches its duty of good faith upon proof by the insured of actual malice, fraud, or insult by the insurer. *Zoppo*, 71 Ohio St. 3d at 557. "Actual malice" is defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Id.* at 558. FKI has alleged that "Valley Forge acted in conscious disregard for the rights of FKI and has caused substantial harm to FKI" by engaging in the conduct specifically set forth by the facts in the counterclaim. (Doc. 54, PageId 2174). It also has requested punitive damages for that purported conduct of Valley Forge. (Id.). Those allegations, combined with the factual allegations set forth in the counterclaims, make it plausible that punitive damages could be warranted in this instance. Valley Forge has set forth no caselaw that would require FKI to provide more to support its request for punitive damages.

Accordingly, FKI has sufficiently pled its request for compensatory damages and punitive damages, as well as its request for attorneys' fees as part of its compensatory damages. Valley Forge's motion to dismiss on this ground is therefore denied.

### E. Amendment of Counterclaim

FKI seeks, in the alternative, to amend its counterclaims if the Court found that FKI's bad faith claim is deficient. The Court finds that allowing the amendment in light of the above is unnecessary.

FKI alleges in the proposed amended counterclaim to assert allegations regarding FKI's intervention in the Valero suit without reasonable justification. But FKI does not identify this new allegation in its briefing, nor does it explain how the new allegation would alter the analysis of its bad faith claim in any way. Valley Forge, in contrast, has demonstrated that it had the burden of seeking an allocated verdict itself or through its insured, even when it does not control the litigation. *World Harvest Church v. Grange Mut. Cas. Co.*, No. 13AP-290, 2013 Ohio 5707, ¶ 28 (10th Dist. Dec. 24, 2013); *see also Lavender v. Grange Mut. Casualty Co.*, No. 1979 Ohio App. LEXIS 10921, at *12-13 (4th Dist. Aug. 27, 1979).[14] Accordingly, FKI has not demonstrated that the allegation would provide a plausible basis for a bad faith claim or otherwise change the outcome of this decision.

FKI also proposes to assert new allegations relating to Valley Forge's conduct after the filing of this lawsuit and damages resulting from such conduct. For the reasons explained above, such allegations are not properly asserted as part of a claim for bad faith by Valley Forge. Accordingly, the addition of those allegations would be futile and fail to change the outcome of this decision.

FKI's additional allegations do not warrant allowing the filing of the proposed amended complaint. First, the allegations concerning Valley Forge's refusal to engage in settlement negotiations to resolve its claims in this litigation are vague, but to the extent they refer to the BFK/Valtech subrogation issue, they have already been addressed herein such that the new allegations would not change the above result. The allegations also are intertwined in the proposed amended complaint with allegations that are not properly before this Court. As such,

---

[14] It is noted that the allegation was included in the fact section of the original Complaint, but was not included in relation to the bad faith claim.

the Court does not find that it would proper at this juncture to allow the proposed amended complaint to be filed.

As for the allegations of damages relating to bearing the costs of pursuing subrogation claims against BFK and Valtech, the allegations may be appropriate in light of the foregoing. However, the allegations are intertwined with many allegations that are not properly before this Court.  As such, the Court does not find that it would be proper at this juncture to allow the proposed amended complaint to be filed.

If FKI wishes to amend the complaint to add any allegations that may properly be before this Court as indicated above, it may do so through a motion for leave to amend the complaint filed within **10 days** of entry of this Opinion and Order.

## III.  <u>CONCLUSION</u>

Consistent with the foregoing, Valley Forge's Motion to Dismiss Count VI (Bad Faith) of FKI's Counterclaim (Doc. 55) is **GRANTED IN PART** and **DENIED IN PART**.  It is ORDERED that:

1.  FKI's Bad Faith Counterclaim is **DISMISSED** to the extent it is based on:

    a.  Valley Forge's purported denial of coverage for the settlement with Valero,

    b.  Valley Forge's filing of a declaratory judgment action based on the duty to indemnify and the implied-in-fact contract (except to the extent noted below), and

    c.  Valley Forge's litigation tactics and strategies in the present litigation.

2.  FKI's Bad Faith Counterclaim remains pending to the extent it:

    a.  is based on Valley Forge's filing of the declaratory judgment action based on the duty to defend and the duty to cooperate,

    b.  is based on Valley Forge's filing of the declaratory judgment as to the implied-in-fact contract, but only to the extent the argument for bad faith is coextensive with the argument that Valley Forge lacked a reasonable belief of the existence of a controversy as to the duty to defend and the duty to cooperate, and

    c.  seeks to introduce, as explained *supra*, evidence of Valley Forge's purported bad faith conduct after the instant litigation was filed that is distinct from Valley Forge's litigation tactics and strategies.

3.  FKI's requests for compensatory damages, punitive damages, and attorneys' fees in relation to the Bad Faith Counterclaim likewise remain pending.

**IT IS SO ORDERED.**

s/Michael R. Barrett_____
JUDGE MICHAEL R. BARRETT
UNITED STATES DISTRICT COURT