UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| VALLEY FORGE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| -v- | ) Civ. Action # 1:14-cv-00792-MRB ) |
| FISHER KLOSTERMAN, INC., | ) ) |
| Defendant. | ) ) ) |

**DEFENDANT FISHER KLOSTERMAN, INC.'S OPPOSITION TO PLAINTIFF VALLEY FORGE INSURANCE COMPANY'S MOTION TO DISMISS COUNT NINE (BAD FAITH) OF DEFENDANT FISHER KLOSTERMAN, INC.'S COUNTERCLAIM (DOC. 102)**

Defendant Fisher Klosterman, Inc. ("FKI") respectfully submits this memorandum of law in opposition to Plaintiff Valley Forge Insurance Company's ("Valley Forge") second motion to dismiss FKI's counterclaim for bad faith (Doc. 102).

**I.   INTRODUCTION**

This is the second time that Valley Forge has filed a motion to dismiss FKI's claim for bad faith. On April 26, 2016, this Court denied Valley Forge's first motion to dismiss. Doc. 82. Specifically, this Court determined that Valley Forge may be liable to FKI for bad faith damages if Valley Forge had no reasonable justification for asserting claims against FKI concerning the duty to defend, duty to cooperate, and implied-in-fact contract in this litigation. *Id.* at PageID 2859, 2878-79.

This Court should deny Valley Forge's second motion to dismiss FKI's claim for bad faith because: (1) this Court has already ruled that FKI has stated a cause of action for bad faith against Valley Forge; (2) FKI's answer with counterclaims addresses the new allegations in Valley Forge's first amended complaint, and federal law specifically allows FKI to amend its

nydocs1-1087994.6

pleadings to address new allegations and evidence; and (3) FKI has sufficiently alleged a claim for bad faith based on Valley Forge's ignoring the law, the evidence, and its own admissions in asserting claims that FKI breached the duty to assist and that FKI breached the subrogation provision in the policies.

This Court should also closely consider the import of the admissions contained in the documents that Valley Forge attached to its motion to dismiss. Those documents make clear that Valley Forge had no justification for filing this action against FKI. For example, in Exhibit G, a letter authored by Kathryn Frost, Valley Forge admits that it understands and agrees that the duty to defend is triggered by "the allegations in the Valero Suit and not the actual facts developed at trial." Doc. 105-7 at PageID 3398. This is *exactly the opposite* of what Valley Forge has asserted in this litigation.[1] This letter and other documents further reinforce the conclusion that Valley Forge understood that it had no justification for the claims that it has asserted against FKI. Valley Forge understood that its duty to defend was triggered by the allegations in the complaint – not, as it argued to this Court, the facts as found at summary judgment or trial. As the documents show, Valley Forge led FKI to believe that FKI had cooperated with Valley Forge and had not impaired any subrogation rights by entering the partial settlement agreement with Industries Valtech Inc. ("Valtech"). In sum, Valley Forge's own documents which are attached as exhibits to Valley Forge's second motion to dismiss, reveal not

---

[1] Valley Forge asserted throughout its opening brief in support of summary judgment that, "[w]hen an insurer promises only to defend suits 'to which this insurance applies,' Ohio law holds that the duty to defend does not arise solely from the face of the complaint, but must be determined based on the 'true facts' underlying the complaint." Plaintiff Valley Forge Insurance Company's Motion for Summary Judgment on the Duty to Defend, Duty to Indemnify and Reimbursement of Defense Costs Based on Implied Contract in Fact, filed Feb.27, 2015, at 2; *see also id.* at vii, 12, 12-13. Valley Forge also argued this precise point throughout its reply brief in support of summary judgment. Plaintiff Valley Forge Insurance Company's Reply in Further Support of its Motion for Summary Judgment on the Duty to Defend, Duty to Indemnify and Reimbursement of Defense Costs Based on Implied Contract in Fact and Opposition to Fish Klosterman, Inc.'s Cross-Motion for Summary Judgment as to the Duty to Defend, filed Apr. 23, 2015, at vii, 1, 11-13.

2

only that Valley Forge's claims have no merit – but that Valley Forge knew that they had no merit long before it filed its complaint.  That is textbook bad faith.

## II.  RELEVANT FACTS AND PROCEDURAL HISTORY

Valley Forge commenced this litigation in an effort to wrongfully force FKI to forego valuable insurance coverage for which CECO Environmental Corp. (FKI's parent corporation) paid a substantial premium.  Valley Forge has falsely alleged that FKI breached its duty to cooperate in the defense of the Valero Suit, a Texas state court products liability action in which Valero alleged that defective Actchem 85 contained within FKI's regenerator cyclones and third stage separators caused Valero substantial property damage.  Doc. 81 at PageID 2810-19.  Valley Forge also unjustifiably seeks to recoup the defense costs it paid to FKI's defense counsel in the Valero Suit, Jones Day, by way of claims for implied-in-fact contract, implied-in-law contract, unjust enrichment, and quantum meruit.[2]

Most recently, on April 5, 2017, Valley Forge amended its complaint to add claims for "reimbursement of defense costs based on breach of contract and common law duties," breach of the policy's subrogation provision, and a declaration of good faith claims handling.  FAC ¶¶121-126, 139, 153-155, 193-200, 217-220, 236-260.  Valley Forge also added several allegations to its claim for breach of the cooperation clause with respect to the duty to assist in the enforcement of claims against third parties.  FAC ¶¶151-152, 161-167, 169-170, 172-173, 179-180.

---

[2] For a more detailed recitation of the facts in this case and FKI's bad faith allegations, FKI refers the Court to this Court's April 2016 decision concerning the parties' cross-motions for summary judgment (Doc. 81 at PageID 2810-27), as well as FKI's Opposition to Valley Forge's Motion to Dismiss, dated November 19, 2015 (Doc. 57 at PageID 2403-06) and the Court's April 2016 decision on Valley Forge's first motion to dismiss (Doc. 82 at PageID 2852-55).

3

Valley Forge moved to dismiss FKI's original bad faith counterclaim on October 26, 2015. Docs. 56-58. This Court held that FKI had stated a claim for bad faith against Valley Forge. Doc. 82 PageID 2865, 2878-79. This Court also upheld FKI's claims for attorneys' fees and punitive damages. *Id.* at PageID 2873-76.

FKI filed its Answer to First Amended Complaint, Counterclaims, and Demand for Jury Trial ("ACC") on April 19, 2017, which included an amended counterclaim for bad faith.[3] Doc. 102. Valley Forge moved to dismiss the amended bad faith counterclaim on May 3, 2017. Doc. 105.

## III. APPLICABLE LEGAL STANDARDS

### A. Motion to Dismiss

As this Court stated in its September 3, 2015 and April 26, 2016 Orders:

> When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." To properly state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above the speculative level.'" "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[3] In its Amended Counterclaims, FKI seeks declarations that: (1) Valley Forge had a duty to defend FKI in the Valero Suit (ACC ¶¶91-115); (2) there is no implied-in-fact contract between Valley Forge and FKI for recoupment of defense costs (ACC ¶¶116-128); (3) Valley Forge has no right to recovery based on "breach of contract and common law duties" (ACC ¶¶129-143); (4) Valley Forge has no right to recovery of defense costs based on implied-in-law contract (ACC ¶¶144-155); (5) FKI was not unjustly enriched by Valley Forge's payment of defense costs (ACC ¶¶ 156-166); (6) Valley Forge has no right to recovery in quantum meruit due to its payment of defense costs (ACC ¶¶167-177); (7) FKI cooperated with Valley Forge in the defense of the Valero Suit (ACC ¶¶178-193); (8) FKI did not impair any subrogation rights under the policy (ACC ¶¶194-219); and (9) Valley Forge committed bad faith with respect to FKI's insurance claim (ACC ¶¶220-267).

4

Doc. 50 at PageID 2107-2108 (citations omitted; emphasis added); Doc. 82 at PageID 2855-56. Similar considerations apply to a motion to dismiss a counterclaim. *See, e.g.*, *Edizer v. Muskingum Univ.*, No. 2:11-cv-799, 2012 U.S. Dist. LEXIS 140010, at *19-20 (S.D. Ohio Sept. 28, 2012). Additionally, as this Court stated, documents extrinsic to the complaint may be considered if they are "referred to in the [c]omplaint and are central to the claims contained therein," so long as "there exist no material disputed issues of fact regarding the relevance of the document." Doc. 82 at PageID2855 (citations omitted).

### B. Bad Faith Under Ohio Law and this Court's April 2016 Order

On April 26, 2016, this Court sustained FKI's bad faith counterclaim and rejected Valley Forge's first motion to dismiss. Doc. 82. This Court held that under Ohio law, an insurance company acts in bad faith when its actions or inactions in the handling of its policyholder's claim are made without "reasonable justification." Doc. 82 at PageID 2856. This Court determined that "[a]n insurer lacks reasonable justification only when it acts in an arbitrary and capricious manner," including when the insurance company files a declaratory judgment action against its policyholder even though the insurance company "could not have reasonably believed that a controversy exists to support [its] claims." *Id.* at PageID 2857, 2859 (citations omitted). As this Court has already determined, FKI's counterclaim stated a cause of action for bad faith. FKI's answer to Valley Forge's First Amended Complaint, which responds to the new and still baseless claims and unsubstantiated allegations in that complaint, also states a cause of action for bad faith and Valley Forge's second motion to dismiss FKI's bad faith claim should be denied.

IV.   ARGUMENT

    A.   **This Court Has Already Ruled that FKI Has Stated a Claim for Bad Faith Against Valley Forge.**

This Court has already held that FKI has stated a claim for bad faith against Valley Forge. Doc. 82. In attempting once again to dismiss FKI's claim for bad faith, Valley Forge rehashes the same arguments in its second motion to dismiss, that it raised in the first go-round. The Court rejected those arguments before and should do so again for the reasons stated in this Court's own decision and order and in FKI's opposition to Valley Forge's first motion to dismiss. Doc. 57.[4] As this Court has held, "binding precedent does not permit this Court to give [Valley Forge] a 'do-over' in this case" and "the Court will not consider arguments that it has already addressed." *S.L. v. Pierce Twp. Bd. Of Trustees*, No. 1:07-cv-986, 2011 U.S. Dist. LEXIS 110642, *14 (S.D. Ohio Sept. 28, 2011) (Barrett, J.) (denying motion for reconsideration).[5]

---

[4] The arguments Valley Forge made in its first motion to dismiss, which Valley Forge reargues in its brief and which were rejected by this Court, include: that "the filing of this lawsuit is not a basis for a bad faith claim" (Doc. 105 at PageID 3314; Doc. 56 at PageID 2185, 2186-2189); that Valley Forge "could have reasonably believed a controversy existed as to the duty to cooperate" (Doc. 105 at PageID 3317; Doc. 56 at PageID 2185, 2186-89); that Valley Forge's "claim for reimbursement under an implied-in-fact contract is not a basis for a bad faith claim" (Doc. 105 at PageID 3325; Doc. 56 at PageID 2191); and that "FKI's allegations regarding its alleged tender of its rights against BFK and Valtech to Valley Forge is not a basis for a bad faith claim" (*id.* at PageID 3325; Doc. 56 at PageID 2188-89).

[5] Valley Forge also cites the Court's April 2016 decision concerning Valley Forge's first motion to dismiss (Doc. 82) and its March 2017 decision allowing Valley Forge to amend its complaint (Doc. 100) as "new developments" that require the Court to revisit its decision on Valley Forge's first motion to dismiss. However, the Court's April 2016 decision actually *sustained* FKI's bad faith counterclaim. Doc. 82. Valley Forge ignores that the Court also found in April 2016 that Valley Forge had a duty to defend FKI in the Valero Suit (Doc. 81) and then reaffirmed that finding when it denied Valley Forge's motion for reconsideration in March 2017 (Doc. 99). Further, contrary to Valley Forge's assertion that the Court's April 2016 decision was "unclear" on these points, the Court explicitly found that FKI's bad faith claim could be based on FKI's tender of its claim against BFK to Valley Forge and that FKI may rely on settlement discussions to support its claims. Doc. 105 at PageID 3325-27; Doc. 82 at PageID 2872; *id.* at n.12.

### B. Federal Law Expressly Permits FKI to Amend its Claims to Conform to Valley Forge's New Pleadings and Evidence.

Valley Forge argues that FKI is bound by the allegations asserted in its original bad faith counterclaim because FKI did not move for leave to amend its counterclaims after the Court's April 2016 Opinion. Doc. 105 at PageID 3313. Valley Forge's position is contrary to established precedent in the Southern District of Ohio concerning amended pleadings, which permits a party to "plead anew" as though it were responding to the original complaint "'where a plaintiff files an amended complaint which changes the theory or scope of the case.'" *See Medpace, Inc. v. Biothera, Inc.*, No. 1:12-cv-179, 2013 U.S. Dist. LEXIS 157562, at *4 (S.D. Ohio Nov. 4, 2013) (Black, J.)(denying plaintiff's motion to strike new counterclaim and new factual allegations in defendant's amended answer and counterclaims where plaintiff filed amended complaint but defendant did not move for leave to amend)(citation omitted); *Fitzpatrick v. Potter*, No. 1:04-cv-369, 2005 U.S. Dist. LEXIS 48794, at *6-7 (S.D. Ohio Oct. 14, 2005) (rejecting plaintiff's argument that defendant waived affirmative defense asserted in amended answer, but not raised in original answer). "Pleading 'anew' includes pleading new counterclaims" and even "new factual allegations that are not responsive to [the] amended complaint" – there is no requirement that there be a nexus between the new allegations and the amended complaint. *Medpace, Inc.*, 2013 U.S. Dist. LEXIS 157562 at *4-*7.

Valley Forge's First Amended Complaint adds new claims (FAC¶¶121-126, 139, 153-155, 193-200, 217-220, 236-260) and new factual allegations that go well beyond the scope of its original complaint. *See, e.g.*, FAC ¶¶2, 3-7, 78, 93, 113, 109, 113, 121-131, 139, 140, 142-144, 148, 151-155,161-167, 169-170, 172-173, 179-180, 193-202, 209, 217-220, 228-229, 233, 236-260. Moreover, Valley Forge has failed to present any "evidence that [it] will suffer any prejudice as a result of the additional factual allegations." *Medpace, Inc.*, 2013 U.S. Dist. LEXIS

7

157562 at *7. Under federal law, FKI is permitted to amend its counterclaims to respond to Valley Forge's new pleadings without leave of Court and that is what FKI has done here.[6]

      **C.    FKI Has Sufficiently Alleged a Claim For Bad Faith Based on Allegations That Valley Forge Had No Reasonable Basis to File Additional Cooperation Clause Claims and a New Breach of Subrogation Clause Claim.**

           **1.    Valley Forge Unreasonably Ignored Evidence, the Law, and Its Own Admissions in Asserting a Claim Against FKI for Breach of the Cooperation Clause.**

In its second motion to dismiss, Valley Forge asserts that FKI's bad faith claims should be dismissed to the extent they are based on Valley Forge's filing a claim against FKI for allegedly breaching the cooperation clause. A policyholder's "duty to assist" its insurance company is part of the duty to cooperate and is subject to the same standards. *See Employers Ins. v. James McHugh Constr. Co.,* 144 F.3d 1097, 1105 (7th Cir. 1998) (holding that a duty to assist clause such as the one in the Valley Forge policy "also represents a duty to cooperate on the part of the insured, but it pertains to the insurer's right of subrogation" and that the insurance company has the burden to prove such provision was breached). This Court has already determined that FKI has alleged a bad faith claim based on Valley Forge's unreasonably pursuing a claim against FKI for breach of the cooperation clause. Doc. 82 at PageID 2866.

      Valley Forge's claim for breach of the duty to cooperate and the duty to assist is based on (1) FKI's alleged failure to join BFK in the Valero Suit and (2) FKI's alleged failure to tender the defense of the Valero Suit to Valtech's insurance company. As to each of these, FKI has alleged facts sufficient to state a claim for bad faith against Valley Forge. With respect to BFK, FKI has alleged that Valley Forge agreed that BFK need not be joined in the Valero Suit so

---

[6] To the extent FKI's amended counterclaim recites allegations contained in its original counterclaim that potentially were dismissed by the Court's April 2016 decision, those allegations are included in order to preserve them for appeal. 3-15 Moore's Fed. Prac. – Civil § 15.17[4]. Presumably Valley Forge is doing the same thing by continuing to allege in its pleadings that it had no duty to defend FKI, despite this Court's ruling on summary judgment that Valley Forge had a duty to defend FKI in the Valero suit.

long as FKI agreed to bring the motion concerning successor liability, which it did. ACC ¶¶12, 72, 212. FKI also alleges that FKI brought suit against BFK within the statute of limitations thereby preserving potential claims against BFK and that FKI tendered the litigation to Valley Forge, but Valley Forge unreasonably failed to respond to the tender. ACC ¶¶73, 207, 241. Further, Valley Forge's communications to BFK show that Valley Forge believed that several bases for an indemnification claim existed against BFK as late as September 2014. Doc. 105-7 at PageID 3391-93; ACC ¶¶80 (citing draft demand letter from Valley Forge to BFK), 81-83 (citing July 18, 2014 letter and September 8, 2014 email from Valley Forge to FKI stating that Valley Forge only had rights to "past legal costs"). FKI has also alleged that Valley Forge was extensively involved in strategy with respect to claims against BFK and itself attempted to negotiate a tolling agreement with BFK and its insurance companies. ACC ¶¶210-211. In short, FKI has alleged that Valley Forge had no reasonable basis for alleging that FKI failed to assist or somehow impaired any claims against BFK.

With respect to Valtech, FKI has alleged that FKI tendered the Valero Suit to FKI in April 2011, continued to update Valtech concerning the Valero Suit throughout the course of that litigation, and entered a tolling agreement with Valtech effective December 2013 to preserve potential claims, which Valley Forge itself was involved in drafting. ACC ¶¶75-79; DiCanio Decl., filed Mar. 24, 2016, Ex. B (tolling agreement with Valtech). Valley Forge argues that the tender was not sufficient because it did not specifically request that Valtech put its insurance companies on notice. Doc. 105 at PageID 3323. However, Valley Forge's own evidence shows that, even though Valley Forge's claim handler Jonathan Domante was blind copied on the April 2011 letter to Valtech at the time it was sent (Doc. 105-6 at PageID 3375), Valley Forge *never* said that the letter was inadequate until now. Valley Forge's communications with FKI show

9

that it believed that its claims against Valtech had not been impaired as late as September 2014. Doc. 105-7 at PageID 3396-3399; ACC ¶¶80 (citing draft demand letter from Valley Forge to BFK), 81-83 (citing July 18, 2014 letter and September 8, 2014 email from Valley Forge to FKI stating that Valley Forge only had rights to "past legal costs").  FKI learned that Valtech was self-insured at the same time Valley Forge did, such that Valley Forge had access to all of the same information as FKI with respect to the status of Valtech's insurance and but did not ask FKI to bring suit at that time or otherwise work with FKI to preserve its right – it simply filed a coverage action against FKI.  ACC¶¶243-246, 261.  In short, FKI has sufficiently alleged that Valley Forge had no reasonable justification for claiming that FKI breached the duty to assist clause in the policy with respect to claims against Valtech or BFK.

> 2. **Valley Forge Ignored the Evidence, the Law and its Own Admissions When It Added Its Claim for Breach of the Subrogation Clause.**

Valley Forge also asserts that FKI's bad faith counterclaim should be dismissed to the extent it is based on Valley Forge's claim that FKI breached the policy's subrogation clause. That argument must also be rejected because FKI did not impair any subrogation rights, Valley Forge was aware prior to adding its claim for breach of the subrogation clause that no rights were impaired, and any alleged impairment did not prejudice Valley Forge.  *See* Doc. 82 at PageID 2866.

In adding its claim for breach of the subrogation clause, as FKI has alleged, Valley Forge ignored both its own admissions and clear Ohio law stating that Valley Forge's potential subrogation rights extend only to claims pertaining to defense costs incurred in the Valero Suit.  ACC ¶¶197-198; *see, e.g., Hoosier Cas. Co. v. Davis*, 173 N.E.2d 349, 352 (Ohio 1961) (insurance company may commence subrogation action against third-party tortfeasor "to the extent of the amount paid under" the insurance policy); *Bartholomew-Graham v. Matejcik*,

10

No. 14 CVC-06-5973, 2015 Ohio Misc. LEXIS 13120, *14 (Ohio Ct. Comm. Pls. Sept. 11, 2015) (accepting insurance company's argument that subrogation only exists for sums actually paid). *See also Ferrando v. Auto-Owners Mut. Ins. Co.,* 781 N.E.2d 927, 949 (Ohio 2002) (court must first determine whether subrogation clause was breached and second, whether insurance company was prejudiced by breach).

FKI has alleged that Valley Forge was aware of Ohio law that Valley Forge only has rights to indemnification for defense costs paid, but chose to ignore it in filing its claim.[7] ACC ¶¶200-203. The evidence Valley Forge submits in support of its motion to dismiss and cited in the ACC shows that Valley Forge itself believes this to be the law. In Valley Forge's July 10, 2014 email to FKI sent at 10:06:58 PM, Valley Forge states that it "*currently has rights to the past legal costs but Valley Forge is not in a position to demand payment from Valtech to settle the Valero Suit.*" ACC ¶80; Doc. 105-7 at PageID 3377 (emphasis added). Valley Forge makes the *same* point concerning potential recovery from BFK: "*The past defense costs were paid by Valley Forge and the bases of recovery for those past costs are different from the obligation owed by BFK to settle the Valero Suit.*" ACC ¶80; Doc. 105-7 at PageID 3377. Valley Forge then states in its July 18, 2014 letter that: "Currently, pursuant to the Valley Forge policy, the right to recoup *the past costs* from Valtech and BFK is Valley Forge's right. . . . We remind FKI that it is not authorized and cannot negotiate, waive, or settle the rights to *the past legal costs* without Valley Forge's prior consent." ACC ¶¶81-82 (emphasis added).

---

[7] Valley Forge also ignores the fact that, as FKI has alleged, Valley Forge denied coverage for the Valero Suit prior to FKI's partial settlement with Valtech, so FKI had no duty to protect Valley Forge's subrogation rights under the policies. ACC¶¶84, 180, 188-190, 214-216; *Aufdenkamp v. Allstate*, No. 98CA007269, 2000 Ohio App. LEXIS 184, at *8 (Ohio Ct. App. Jan. 19, 2000); *Bakos v. Insura Prop. & Cas. Ins. Co.*, 709 N.E.2d 175 (1997); 3-20 Appleman on Insurance § 20.05[4][b][iv]. Moreover, FKI has alleged, under Ohio law a partial breach of the subrogation clause does not relieve the insurance company's duty to pay on all of its policyholder's claims. ACC¶199; *Colgrove v. Weyrick*, No. 18290, 1998 Ohio App. LEXIS 2029, at *23-24 (Ohio Ct. App. May 6, 1998).

11

Accordingly, Valley Forge repeatedly and consistently told FKI that it only had rights against Valtech and BFK with respect to "past defense costs." This was not a mistake or misunderstanding on Valley Forge's part as to the state of the law on this issue. Further, Valley Forge led FKI to believe that it was not impairing any of Valley Forge's alleged subrogation rights when it entered into the partial settlement agreement with Valtech. FKI has alleged that Valley Forge must be estopped from asserting that its subrogation rights were impaired because Valley Forge led FKI to believe it would not impair any subrogation rights by entering the partial settlement agreement. ACC¶¶239. FKI has sufficiently alleged that Valley Forge's claim for breach of the subrogation clause is without reasonable justification.

### 3. Valley Forge's Convoluted Arguments Concerning Prejudice Do Not Withstand Scrutiny.

Valley Forge's claim that FKI allegedly impaired Valley Forge's subrogation rights has the same defect as its cooperation claim – in both cases it is clear that Valley Forge has suffered *no* prejudice as a result of the supposed breach. *Clark v. Chubb Group. of Ins. Cos.*, 337 F.3d 687, 692 (6th Cir. 2003) (addressing subrogation provision which required that policyholder "must do nothing after 'accident' or 'loss' to impair" the insurance company's subrogation rights and stating that Ohio law requires that breach of subrogation provision be prejudicial in order to vitiate coverage); *Thomas v. Nationwide Mut. Ins. Co.*, 895 N.E.2d 217, 234 (2008) (when determining whether insurance company was prejudiced due to alleged breach of subrogation clause, considerations include the cost in pursuing a claim against the wrongdoer and likelihood of recovery). *See also Weller v. Erie Ins. Co.,* 708 N.E.2d 271, 274 (1998) (with respect to the cooperation clause, "[p]rejudice has been described as involving material injury to the insurer's ability to contest the merits of the case, or serious impairment in investigating the claim or defending the merits of the case.").

12

Valley Forge asserts that FKI impaired Valley Forge's subrogation rights because FKI did not sue Valtech before the expiration of the statute of limitations for breach of contract based on Valtech's failure to procure insurance as required by the purchase order. Doc. 105 at PageID 3318-3321. Valley Forge further asserts that FKI's failure to enforce its claim harmed Valley Forge because its policy would have been excess of Valtech's insurance, which would have paid for FKI's defense. *Id.* This argument only serves to highlight the baselessness of FKI's subrogation claim.

First, the assertion that the statute of limitations expired on FKI's breach of contract claim before 2012 is completely inconsistent with Valley Forge's arguments that FKI breached the subrogation clause by entering into the partial settlement agreement in September 2014. Doc. 105 at PageID 3322.[8]

Second, under the plain wording of the policy, Valley Forge's claim that it would be excess to Valtech's insurance is purely speculative and extremely attenuated. Doc. 105 at PageID 3318. By its terms, the endorsement Valley Forge cites ("Excess Provision-Vendors") is only triggered *if* (1) FKI is added to Valtech's insurance as an additional insured and (2) Valtech's insurance was valid and collectible. Doc. 105-1 at PageID 3331; Doc. 105-2 at PageID 3334; Doc. 105-3 at PageID 3337; Doc. 105-4 at PageID 3340. Moreover, Section IV.4.b.(2) of the policy states that Valley Forge still has a duty to defend even where there is other insurance:

> When this insurance is excess, we will have no duty under
> Coverages A or B to defend the insured against any "suit" if any

---

[8] This is not the only inconsistency in Valley Forge's story. Valley Forge also asserts that "the only avenue to recover legal costs and expenses incurred by Valley Forge in the defense of FKI from Valtech was through causes of action against Valtech based on the Purchase Order between FKI and Valtech." Doc. 105 at PageID 3324. However, this is inconsistent with the April 11, 2011 demand letter to Valtech, on which Valley Forge was blind copied, which cites *Texas Civil Practices & Remedies Code* Sec. 82.002 as the source of Valtech's liability. Doc. 105-6 at PageID 3374.

13

> other insurer has a duty to defend the insured against that "suit."  <u>If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.</u>

McMullen Decl., filed Mar. 30, 2015, Ex. B at Fisher 000085 (emphasis added).  The excess endorsement would not be triggered in a situation such the one at bar, where the Valtech did not have insurance to which FKI could be added as an additional insured, and even if Valtech did have insurance, that insurance may not have to defend FKI in the Valero Suit, in which case Valley Forge would be required to defend FKI anyway (and would be in the exact same position as it is now).  Valley Forge is asking this Court to find that FKI forfeited its own liability insurance based on the actions or inactions of a third party outside of FKI's control.  This is not supported by the law or the facts.

Finally, Valley Forge's assertion that all potential remedies against Valtech are time barred under K.R.S. §355.2-102 is specious.  Doc. 105 at PageID 3320.  *Elec. Ins. Co. v. Freudenberg-NOK, Gen. P'ship,* 487 F. Supp. 2d 894, 896 (W.D. Ky. 2007), considered and rejected precisely this argument under circumstances strikingly similar to those at bar.  In *Freudenberg-NOK, Gen. P'ship*, General Electric Company's ("GE") insurance company sued the supplier of goods purchased by GE in an effort to recover for payments made to GE's customers for property damage caused by the defective product (which had been incorporated into GE's dishwashers).  *Id.*  The supplier argued that K.R.S. §355.2-102, which applied a four year statute of limitations to sale-of-goods contracts, applied to the insurance company's claims and that the claims accrued at the time the allegedly defective product was delivered.  *Id.* at 897.  However, the court found that K.R.S. §355.2-102 did not apply to the insurance company's common law cause of action for indemnity, which was subject to a five year statute of limitations under K.R.S.§ 413.020(7), and that the insurance company's indemnity claims accrued when the

14

payments were made to GE's customers, "not at the time of the underlying accident." *Id.* at 900.[9]

As shown in Exhibit G to Valley Forge's motion to dismiss, Valley Forge did not make any payments in connection with the Valero Suit until June 2013, at the earliest. Doc. 105-7 at PageID 3387. Under Kentucky law, assuming that such claims are not preserved by the tolling agreement with Valtech, the statute of limitations for Valley Forge's common law indemnification claims does not expire until at earliest June 2018, over a year from now. Thus, as Valley Forge knows, Valley Forge has suffered no prejudice and thus cannot under any circumstances succeed on a claim for breach of the policy's subrogation provision.

### 4. Valley Forge's Cases Concerning Cooperation and Subrogation Are Distinguishable From the Instant Facts and Are Therefore Inapplicable.

None of the cases Valley Forge cites in its brief addresses issues or facts similar to those at bar and thus do not control the outcome of Valley Forge's motion to dismiss. Many of Valley Forge's cases, unlike here, involve the policyholder's failure to give timely notice where the untimely notice precluded the insurance company from pursuing subrogation rights before the statute of limitations expired. *See Lepley v. Hartford Acc. & Indem. Co.*, 334 F.3d 544, 552 (6th Cir. 2003); *Helms v. Nationwide Ins. Co. of Am.*, No. 1:11-cv-410, 2011 WL 4024790, *6 (S.D. Ohio Sept. 12, 2011); *Pa. Gen. Ins. Co. v. Park-Ohio Indus.*, 930 N.E.2d 800, 806-807 (Ohio 2010); *Panta v. Cincinatti Ins. Co.*, 2003-Ohio-762, P42 (Ohio Ct. App. 2003); *Wilson v. Wilson*, 2001 Ohio App. LEXIS 1899, *1 (Ohio Ct. App. 2001).

---

[9] The case cited by Valley Forge on this issue is inapplicable because it concerned the situation where, unlike here, the policyholder was pursuing the claim against the tortfeasor and therefore the insurance company could not independently maintain a cause of action against the tortfeasor. *See Gov't Employees Ins. Co . v. Winsett*, 153 S.W.3d 862, 864 (Ky. Ct. App. 2004). Accordingly, the *Winsett* decision did not address the insurance company's common law indemnification claims against the tortfeasor.

This is not a case of late notice. The facts of Valley Forge's cases bear little similarity to the instant facts, where FKI consistently kept Valley Forge informed of the status of the Valero Suit and potential claims against BFK and Valtech, Valley Forge was highly involved in the defense of the litigation and strategy, and Valley Forge had access to all the same information as FKI with respect to potential claims against Valtech and Valtech's insurance status, including direct involvement in negotiating a tolling agreement with Valtech.

For the same reasons, the cases cited by Valley Forge with respect to a policyholder's failure to provide information to the insurance company are also of little assistance to the Court. *Park-Ohio Holdings Corp. v. Liberty Mut. Fire Ins. Co.,* 142 F. Supp. 3d 556, 566 (N.D. Ohio 2015) (facts concerning cooperation unclear); *Gabor v. State Farm Mut. Auto. Ins. Co.*, 583 N.E.2d 1041, 1043 (Ohio Ct. App. 1990) (concerning first party property claims involving arson); *Templin v. Grange Mut. Cas. Co.*, 611 N.E.2d 944, 945 (Ohio Ct. App. 1992) (same). *See also Luntz v. Stern*, 20 N.E.2d 241, 246 (Ohio 1939) (where policyholder purposefully withheld information from and interfered in insurance company's investigation to coerce insurance company to pay for injured passengers).

## CONCLUSION

For all of the reasons set forth herein, FKI respectfully requests that the Court deny Valley Forge's motion to dismiss FKI's amended counterclaim for bad faith.

Dated:   May 24, 2017

By:   */s/ Matthew A. Rich*
Matthew A. Rich, Esq. (0077995)
KATZ TELLER
255 East Fifth Street, 24th Floor
Cincinnati, Ohio  45202
Telephone: (513) 977-3475
mrich@katzteller.com

Pamela D. Hans, Esq.
ANDERSON KILL P.C.

16

nydocs1-1087994.6

        1760 Market Street, Suite 600
        Philadelphia, PA  19103
        Telephone:  (267) 216-2700
        phans@andersonkill.com

        Carrie Maylor DiCanio, Esq.
        ANDERSON KILL P.C.
        1251 Avenue of the Americas
        New York, New York 10020
        Telephone: (212) 278-1046
        cdicanio@andersonkill.com

        *Attorneys for Defendant*
        *FISHER KLOSTERMAN, INC.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2017 the foregoing document was electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to counsel of record registered to receive electronic service to:

Kathryn M. Frost
Elenius Frost & Walsh
333 South Wabash Avenue
25th Floor
Chicago, IL 60604
Email: kathryn.frost@cna.com

Thomas B. Bruns
Freund Freeze & Arnold - 1
Fourth & Walnut Centre
105 E Fourth Street
Suite 1400
Cincinnati, OH 45202-4009
Email: tbruns@ffalaw.com

                                        __*/s/ Matthew A. Rich*_____
                                        Matthew A. Rich (007995)